(No. 15097.—Reversed in part and remanded.)

THE PEOPLE *ex rel.* Homer M. Browne, County Collector, Appellee, *vs.* THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY, Appellant.

*Opinion filed February 21, 1923.*

1. HIGHWAYS—*State Highways act of June 24, 1921, is not invalid as an unlawful amendment of statute.* The act of June 24, 1921, in relation to State highways, does not violate the provision of section 13 of article 4 of the constitution against amending a section or act without inserting the amended statute in the new act, as the act is an independent one to establish a system of State highways, even though it repeals by implication all acts or parts of acts inconsistent with its terms.

2. TAXES—*amount of tax necessary for county purposes rests in discretion of county board.* Taxes should not be levied for the unnecessary accumulation of funds or for remote contingencies which may never occur, but the question of the proper amount of taxes to be raised for current county expenses is committed to the reasonable discretion of the county board, and the courts will interfere only to prevent a clear abuse of this discretion.

3. SAME—*when excessive amount of estimated county tax is no defense to its collection.* The county board has the right to provide for maintaining a balance in the treasury sufficient at all times to meet all current claims upon it and is presumed to have properly discharged its duty, and the mere fact that in estimating in advance the amount that may be necessary to be levied an amount greater than that actually required has been determined upon is no defense to the collection of a tax unless the amount levied is so excessive as to show a fraudulent purpose in making the levy.

4. SAME—*city light and water tax must be included in limit for general purposes.* The exception "of taxes authorized by law for specific purposes" from the rate of one and one-third per cent for general corporate purposes allowed to be levied by cities of less than 150,000 inhabitants (Laws of 1919, p. 732,) refers to taxes authorized for specific purposes by laws which expressly exclude them from the general limitation, and does not authorize a separate levy for the maintenance of waterworks and for street lighting in addition to the levy of the full amount for general purposes.

5. SAME—*city cannot levy taxes except by statute.* A city can levy no tax except by virtue of a statute.

6. SAME—*when consent to levy of an additional tax under section 56 of Road and Bridge law must be obtained.* Under section 56

of the Road and Bridge law the consent of the board of town aud-
itors is a condition precedent to the levy by the highway commis-
sioner of a tax in excess of fifty cents on the $100 for road and
bridge purposes, but such consent may be obtained on the first
Tuesday of September, provided it is obtained before the levy for
the additional amount is made.

7. SAME—*consent of the town auditors to additional tax must be
given at official meeting of board.*  The consent of the board of
town auditors which is required to be obtained before the highway
commissioner can levy an amount in excess of fifty cents on the
$100 for road and bridge purposes under section 56 of the Road
and Bridge law must be given at an official meeting of the board
by a majority of its members acting in their official capacity, and
the action of such meeting can be shown only by the record which
the town clerk is required to keep.

8. SAME—*board of town auditors should specify amount to be
levied by highway commissioner in excess of authorized rate.*  The
board of town auditors, in authorizing the highway commissioner
to levy an amount in excess of fifty cents on the $100 for road
and bridge purposes under section 56 of the Road and Bridge law,
should .specify the additional amount ·authorized, and a consent
which merely grants "the tax levy for the ensuing year in amounts
asked for" is not sufficient to justify the levy of any additional tax.

9. MUNICIPAL CORPORATIONS—*meetings of town auditors must
be held as provided by statute.*  The time fixed by statute for the
meeting of the board of town auditors is nòt directory, merely, but
is mandatory, and there is no provision of law for a meeting at any
other time.

10. OFFICES—*public officers authorized to act as a body cannot
act individually—evidence.*  Where a collection of individuals des-
ignated in a manner provided by law are created a body to whose
care public affairs are committed, the body so created is powerless
to act except together and as a body, and where a record of its
proceedings is required to be kept, such record is the only lawful
evidence of its action, and it cannot be changed by parol proof.

11. Other questions in this case are controlled by the decisions
in *People* v. *Chicago and Eastern Illinois Railway Co.* 305 Ill. 454,
and *People* v. *New York Central Railroad Co.* id. 434.

APPEAL from the County Court of Iroquois county; the
Hon. JOHN H. GILLAN, Judge, presiding.

FREE. P. MORRIS, and ROSCOE C. SOUTH, (H. T. DICK,
of counsel,) for appellant.

ELMER A. TAYLOR, State's Attorney, ROBERT GOOD-YEAR, City Attorney, ARTHUR BOHN, and JOHN P. PAL-LISSARD, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Chicago and Eastern Illinois Railway Company filed objections to the application of the collector of Iroquois county, at the June term, 1921, of the county court, for judgment and order of sale against its property for taxes. The objections were overruled, judgment was rendered against the property, and the railway company appealed.

The county board levied a tax of $296,050, of which $45,000 was for county highway tax, $150,000 for aid in the construction of roads, and $101,050 for all other county purposes. These amounts required a rate of sixty cents on the $100 valuation. The appellant objected that the tax in excess of fifty cents on the $100 was unauthorized. Section 25 of the act of June 22, 1921, (Laws of 1921, p. 386,) authorizes the levy of the tax in addition to the general tax of fifty cents for county purposes, unless additional taxes for the improvement and maintenance of State aid roads or for the payment of the interest and principal of bonded indebtedness for the construction of such roads have otherwise been authorized by vote of the people of the county. The objection that the county board was not authorized to levy the county highway tax thus provided for to an amount in excess of fifty cents on the $100 was considered and overruled in *People* v. *Chicago and Eastern Illinois Railway Co.* 305 Ill. 454.

It is also argued that the section is unconstitutional because it is discriminatory in excluding counties which had already voted additional taxes for the purpose from levying the twenty-five cents additional tax for the improvement and maintenance of State aid roads, but it was held to the contrary in *People* v. *New York Central Railroad Co.* 305 Ill. 434.

It is argued that the act of June 24, 1921, in relation to State highways, violates section 13 of article 4 of the constitution by amending various sections of the statute without inserting the sections amended at length in the new act. This act does not purport to amend any section of the statute but to be an independent act to establish a system of State highways. It declares what shall be regarded as State highways, charges the Department of Public Works and Buildings with the administration of the act, confers additional powers on it for that purpose, and makes provision for the control and supervision of State aid roads by the county board until taken over by the Department of Public Works and Buildings, and for their improvement, maintenance and repair by county funds. Its effect is to repeal or modify all acts or parts of acts inconsistent with its terms, but such amendment by implication is not prohibited by section 13 of article 4 of the constitution. *People* v. *Crossley,* 261 Ill. 78; *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 id. 98; *School Directors* v. *School Directors,* 135 id. 464; *People* v. *Wright,* 70 id. 388.

It is insisted that section 17, which provides that nothing in the act shall be construed to modify, amend or repeal existing laws relative to the construction and improvement of State aid roads, State bond issue roads, Federal aid roads or roads constructed under section 15d of the Road and Bridge act, is inconsistent with section 14, but it is not indicated in what respect section 14 modifies, amends or repeals any requirement of existing laws in regard to the construction or improvement of any of the roads mentioned in section 17.

Objection is also made to the county highway tax because it appears that on September 21, 1920, there was a balance in the county treasury of $367,651.01,—enough to pay the ordinary expenses of the county for three years, based upon the amount paid out in 1920 and the amount levied for that purpose in 1921,—and it is argued that this

levy would merely cause an unnecessary accumulation of money in the county treasury. It was shown that a large part of this balance in the treasury was held for the use of the townships and that the balance for county purposes was $80,964.05. Taxes should not be levied for the unnecessary accumulation of funds or for remote contingencies which may never occur, but the question of the proper amount of taxes to be raised for current county expenses is committed to the reasonable discretion of the county board, and the courts will only interfere to prevent a clear abuse of this discretion. (*People* v. *Atchison, Topeka and Santa Fe Railway Co.* 261 Ill. 33.) The presumption is that the county board has properly discharged its duty, and the mere circumstance that in estimating in advance the amount that may be necessary to be levied, an amount greater than that actually required has been determined upon, is no defense to a tax-payer in refusing to pay his taxes unless the amount levied is so grossly excessive as to show a fraudulent purpose in making the levy. (*People* v. *Chicago and Alton Railroad Co.* 257 Ill. 208; *People* v. *Sandberg Co.* 277 id. 567.) Since only $80,964.05 was available for county purposes, the levy of $101,050 for all purposes for the ensuing year, which did not appear to be of itself excessive, cannot be regarded as unreasonable. The county board has the right to provide for maintaining a balance in the treasury sufficient at all times to meet all current claims upon it, and it cannot be said that the levy in question was not justified by sound business judgment.

Objection was made to the city tax of the city of Watseka. This tax was extended at the rate of $2.27 on the $100, consisting of $1.33 levied for general purposes, sixteen cents for library, forty-seven cents for bonds and interest, eight cents for hospital, seven cents for maintenance of waterworks and sixteen cents for street lighting. Objection was made to the last two items on the ground that they should have been included in the rate of $1.33 for general

purposes. They were levied under the act of June 21, 1883, as amended June 30, 1919. (Laws of 1919, p. 862.) This act authorized the city council to levy two-thirds of a mill on the dollar for the extension of water mains and the maintenance of waterworks and two mills on the dollar for the purpose of lighting streets, provided that nothing in the act should be construed to increase the amount of aggregate taxes that might be levied under section 1 of article 8 of the act to provide for the incorporation of cities and villages, approved April 10, 1872. The latter section, as amended in 1917, (Laws of 1917, p. 240,) provides that the aggregate amount of taxes levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon, shall not exceed the rate of two per cent in cities and villages of less than 150,000 population. This section was amended in 1919 (Laws of 1919, p. 732,) so as to provide that the aggregate amount of taxes so levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon, and exclusive of taxes authorized by law for specific purposes, shall not exceed the rate of one and one-third percentum from the taking effect of the act to and including the year 1921, and thereafter eight-tenths of one percentum in cities and villages of less than 150,000 population according to the last national or State census. It is claimed that under this amendment the amounts levied for the maintenance of waterworks and for street lighting were authorized by law for specific purposes, and were therefore excluded from the aggregate of one and one-third percentum mentioned in the amendment. Under section 1 of article 5 of the act of 1872, which provides for the incorporation of cities and villages, city councils were authorized by paragraph 2 to appropriate money for corporate purposes; by paragraph 3 to levy and collect taxes for general and special purposes; by paragraph 11 to provide for the lighting of the streets. By section 1 of article 10 of the same act

city councils were authorized to provide for a supply of water and the construction of waterworks. Section 1 of article 8 provided for the levy of a tax by the passage of an ordinance assessing the amount upon the real and personal property within the city. The law as originally enacted imposed no limitation upon the amount of tax which might be levied, but section 1 of article 8 was amended in 1879 by the addition of a proviso that "the aggregate amount of taxes levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or the interest thereon, shall not exceed the rate of two per-centum upon the aggregate valuation of all property within such city or village." (Laws of 1879, p. 66.) In 1909 this limitation was reduced to one and two-tenths percentum, and so the statute stood until 1917, when the limit was raised to two percentum for cities of less than 150,000 population but remained at one and two-tenths percentum for cities of 150,000 population or over. In 1919 the proviso was again amended so as to read as follows: "The aggregate amount of taxes so levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon, and exclusive of taxes levied for the purposes of pension funds, public library and municipal tuberculosis sanitarium, shall not exceed the rate of one and forty-three and one-third one-hundredths percentum from the taking effect of this act to and including the year 1921 and thereafter not to exceed eight-tenths of one percentum in cities and villages of 150,000 or more population according to the last national or State census, and the aggregate amount of taxes so levied for any one year, exclusive of the amount levied for the payment of bonded indebtedness or interest thereon and exclusive of taxes authorized by law for specific purposes shall not exceed the rate of one and one-third per-centum from the taking effect of this act to and including the year 1921 and thereafter eight-tenths of one percentum in cities and villages of less than 150,000 population accord-

ing to the last national or State census, upon the aggregate valuation of all property within such city or village subject to taxation therein." (Laws of 1919, p. 732.) This limitation permitted levies in cities of 150,000 population or more in excess of the stated aggregate rate for bonds or interest thereon, for pension funds, for public library and for municipal tuberculosis sanitarium, and in cities of less than 150,000 population, for bonds and interest thereon and taxes authorized by law for specific purposes. Under the construction of the appellee it would remove all limitation of taxation upon cities having a population of less than 150,000.

Cities are authorized by the general City Incorporation act, as we have seen, to provide for the lighting of the streets and for the maintenance of waterworks. These purposes, though authorized in the general act, are specific purposes authorized by law, the taxes for which would, under the construction claimed by the appellee, be exempt from the statutory limitation. The amendatory act of 1919, which has been cited, was not necessary to authorize taxation for these purposes. Its only effect was to limit the amount of the levy to two mills on the dollar of the taxable property for the purpose of lighting the streets and one and one-third mills on the dollar for the purpose of supplying water to the city. The exception in the proviso "of taxes authorized by law for specific purposes," refers to taxes authorized for specific purposes by laws which expressly exclude them from the general limitation of taxation. The limitation of the aggregate amount of taxes to be levied to one and one-third percentum was intended to have some effect. It could have no effect if every tax authorized by law for specific purposes was excepted from the limitation. A city can levy no tax except by virtue of a statute. Every tax which the city council is authorized by law to levy is for some specific purpose, and section 1 of article 8, which contains this limitation, requires the ordinance making the

levy to specify in detail the purpose for which appropriations are made and the amount appropriated for each purpose.

Section 56 of the Road and Bridge law authorizes the levy by the highway commissioner of a tax on the first Tuesday of September of not to exceed fifty cents on each $100 valuation unless before the first Tuesday in September he shall have secured the consent, in writing, of a majority of the members of the board of town auditors for the extension of a greater rate, and in that case the rate shall not exceed that approved by the majority of the members of the board of town auditors, and in no case exceed sixty-six cents on each $100 valuation. Objection is made to the road and bridge tax of the towns of Middleport, Milford and Fountain Creek, for the reason that the tax in each case exceeded the rate of fifty cents on the $100 and was levied without the consent of the board of town auditors secured before the first Tuesday in September. The action of the board of town auditors of Middleport in respect to the road and bridge tax was taken on September 6, 1921, which was the first Tuesday in September, and is shown by the record kept by the town clerk of a meeting held on that day in these words: "also grant the tax levy for the ensuing year in amounts asked for." It also appears that a paper consenting to an additional levy was signed by a majority of the members of the board on August 29, 1921. As to Milford, it was stipulated that the consent of the board of town auditors was signed on the last Saturday of August; that the highway commissioner took the paper to each member of the board and it was signed by them in their respective places of business, except that the clerk signed at the clerk's office, where the meetings of the board were held, but there was no meeting of the board. The board of town auditors of Fountain Creek met on September 6, 1921, and the record of their meeting shows their consent to a levy of sixty-six cents on the $100. They also signed a consent in writing on that day.

The board of town auditors is required to hold meetings at the town clerk's office on the Tuesday before the annual meeting of the county board and the Tuesday before the annual town meeting, and may meet, in its discretion, on the fourth Tuesday after the town meeting. (Hurd's Stat. chap. 139, art. 13, sec. 3.) The time fixed by the statute for these meetings is not directory, merely, but is mandatory, and there is no provision of law for a meeting at any other time. (*Chicago and Alton Railroad Co.* v. *People,* 190 Ill. 20.) Section 56 of the Road and Bridge law, if construed literally, requires the consent of the board to be given at an impossible time. It does not refer to the meeting before the annual town meeting, five months before the tax is required to be levied, or the meeting to be held, in the discretion of the board, four weeks after the annual town meeting. The only other meeting authorized by law is that to be held on the first Tuesday in September prior to the annual meeting of the board of supervisors on the second Tuesday. The statute therefore literally provides that consent must be given before the first Tuesday at a meeting which must be held on the first Tuesday. The consent is a condition precedent to the acts of the highway commissioner in levying an additional tax. The highway commissioner is required by law to be present on the same day and at the same place as the board of town auditors for the purpose of determining and certifying the amount required to be raised by taxation for road and bridge purposes, and the town clerk acts as clerk both for the board and commissioner. It is clear that the intention of the legislature was to require the consent of the board of town auditors before the additional amount could be levied and to authorize the additional levy upon such consent previously obtained, but the literal application of the language used would deprive the whole provision for the additional levy of any force. The authority based upon the consent is rendered ineffectual by the requirement as to the time

when the consent must be secured. The intention of the legislature can be effected by requiring the consent to be obtained on the first Tuesday of September before the making of the levy for the additional amount, and this we hold to be the meaning of the provision.

It is contended on the part of the appellee that the requirement of the consent of the majority of the members of the board of town auditors refers to the individuals who constitute the board and does not require the official action of the board. The power to authorize the levy of an additional tax is one which it is not to be presumed the legislature would, if it could, confer upon individuals in their private capacity. The act of consenting to the levy of the additional tax is official in its nature. It requires the official action of the board by a majority of its members, and those members must act in their official capacity at an official meeting, and the action of such meeting can be shown only by the record which the town clerk is required to keep. (Hurd's Stat. chap. 139, art. 13, sec. 10.) Where a collection of individuals designated in a manner provided by law is created a body to whose care public affairs are committed, the body so created is powerless to act except together and as a body. (*McManus* v. *McDonough,* 107 Ill. 95.) Where a record of its proceedings is required to be kept, such record is the only lawful evidence of its action, and it cannot be contradicted or added to by parol. *People* v. *Madison County,* 125 Ill. 334; *People* v. *Carr,* 231 id. 502; *People* v. *Warren,* id. 518; *City of Belleville* v. *Miller,* 257 id. 244; *People* v. *Toledo, St. Louis and Western Railroad Co.* 270 id. 472.

The consent given by the board of town auditors of Middleport township was not sufficient to justify the levy of any additional tax, because it did not specify any amount. It merely stated that the board granted the tax levy for the ensuing year in the amounts asked for, without specifying · what they were. There was no evidence as to what amounts

were asked for, and such evidence would not have been competent if offered. No action of the board of town auditors of Milford township was shown. The record of the board of town auditors of Fountain Creek township shows the consent of the board to the levy of sixty-six cents on the $100 valuation, and the written consent signed by the members of the board. The objection to the road and bridge tax for the town of Fountain Creek was properly overruled, but the objection to the same tax for the towns of Middleport and Milford should have been sustained.

The judgment of the county court will be affirmed as to the county tax and the road and bridge tax of the town of Fountain Creek and will be reversed as to the road and bridge tax of the towns of Middleport and Milford and the city tax of the city of Watseka, and the cause will be remanded.

*Reversed in part and remanded.*