## COOS COUNTY, N. H., et al. v. BERLIN NAT. BANK et al.

### No. 307.

District Court, D. New Hampshire.

Dec. 11, 1937.

Hinkley & Hinkley, of Lancaster, N. H., for Coos County and Fidelity & Deposit Co.

Alexander Murchie, of Concord, N. H., and Crawford Hening and Ira Thayer, both of Berlin, N. H., for Berlin Bank.

MORRIS, District Judge.

This is a bill in equity filed August 16, 1937, in the name of the County of Coos, a body politic, organized and existing in the County of Coos, State of New Hampshire, assignor, by the Fidelity & Deposit Company of Maryland, a corporation organized and doing business at Baltimore in the State of Maryland, assignee of said County of Coos, to recover a sum of money paid to said County of Coos on account of a surety bond securing the faithful performance of the county treasurer's official duties.

The evidence discloses the following facts: Mark H. Taylor of Berlin, N. H., was duly elected as county treasurer for said County of Coos for the period beginning April 1, 1932, and ending March 31, 1934, and acted as such. He gave a bond with the Fidelity & Deposit Company of Maryland as surety for the faithful per-

formance of his duties. After assuming the office, Taylor advertised for bids in accordance with the provisions of the New Hampshire Statutes (Laws 1931, c. 177, §§ 1, 2) relative to the deposit of county funds which provides that:

"All public funds belonging to the several counties, not permanently invested, shall be deposited in such solvent bank or banks in this state as will pay the highest rate of interest on daily average balances for each month. The amount deposited in any bank shall not exceed twenty per cent of its paid up capital and surplus, unless said bank shall furnish a satisfactory bond, approved by the superior court, to secure such deposit."

"The treasurer shall call for bids for the public funds in his hands by publishing a notice calling for such bids in the two newspapers which have the largest circulation in the county, and by such other notice as he may choose."

The privilege was awarded to the Berlin National Bank, it being the highest bidder. In addition to being county treasurer, Taylor was also cashier of this bank.

On February 28, 1933, Taylor deposited certain funds belonging to the County of Coos in the Berlin National Bank in an account in his name as county treasurer of said county. There was already on deposit in said bank sufficient funds belonging to the county so that the total amount in said account on that date amounted to $64,675.26. According to the statutes of the State of New Hampshire then in effect (Public Laws of N. H. c. 39, § 2, as amended by Laws 1929, c. 92, § 1), Taylor as county treasurer could legally deposit in said bank an amount not exceeding 20 per cent. of the paid-up capital and surplus of the said bank which on that date amounted to $155,000, so that the limit of the legal deposit which could be made by the county treasurer on that date was $31,000. The excess over the legal deposit limit amounted to $33,675.26, the bank never having given any bond to secure the excess in accordance with the provisions of the statute.

Taylor was not only charged by law with notice of the last above-mentioned statute but he testified that he had actual knowledge of its provisions.

■ I find as a fact and rule as a matter of law that the bank was charged with knowledge and that it had actual knowledge through its officers and agents of the provisions of said statute.

I find that both Taylor and the bank knew that the said amount, $33,675.26, constituted an illegal deposit by the county treasurer on that date.

On March 4, 1933, the Berlin National Bank was closed in an insolvent condition and remained closed until March 11, 1933, when it was opened under the management of said Taylor for the purpose of accepting new deposits, during which time all the old deposits were tied up so that depositors could not withdraw them, but the new deposits made during the above period were unrestricted.

On March 23, 1933, Taylor was appointed conservator, and this conservatorship continued until April 14, 1934, at which time the Berlin National Bank was opened as a new bank to be called "Berlin National Bank," and many of the depositors of the old bank waived 50 per cent. of their claims in the old bank and were given an unrestricted credit in the new bank for 50 per cent. of the amount of their deposits, but the County of Coos did not waive any part of its claim. The new bank took over, through an agreement, certain assets of the old bank and assumed all preferred claims against it. These assets were classified as class A and class B. Class A assets were purchased by the new bank. Class B included nonliquid and depreciated assets which were turned over to a board of trustees, namely: F. W. Rahmanop, Parker Prince, and Eldon Pierce (deceased) succeeded by Frank Cross, for liquidation. Included in the assets so taken over by the new bank and by the trustees was the sum of $33,675.26 of the funds of the County of Coos illegally deposited in said bank by its county treasurer. These funds illegally deposited by the county treasurer came into his hands in the form of two checks representing money borrowed by the County of Coos in anticipation of taxes. The checks were deposited in the Berlin National Bank and credited to the treasurer's account. The bank sent the checks to its Boston correspondent, the First National Bank of Boston, for clearance and received credit for the same. Later, the First National Bank of Boston transferred $40,000 of the money standing to the credit of the Berlin National Bank to the National Reserve Bank of Boston and was by it credited to the Berlin National Bank.

On May 21, 1934, the "Berlin National Bank" was merged with the City National Bank into what is now known as "Berlin City National Bank," and the assets of Ber-

## 525

lin National Bank were turned over to Berlin City National Bank.

At no time during the progress of the various transactions above enumerated were the funds of the closed bank in the several institutions less than $40,000 and money has always been available to pay the County of Coos the amount of the illegal deposit.

On December 31, 1936, the Fidelity & Deposit Company of Maryland, assignee, paid to the said County of Coos the sum of $11,786.34, by reason of its having been surety on the treasurer's bond, and took an assignment of the county's claim against the bank and the trustees, which amount the assignee seeks to recover less one-half dividend payment made by the trustees amounting to $1,683.76.

The assignee claims that the illegal deposit is impressed with a trust in the hands of the bank and trustees and that said fund has been adequately traced from the Berlin National Bank to the Berlin City National Bank. The first formal claim that the deposit is impressed with a trust was made when this action was brought, although the matter had been informally discussed.

From the evidence I find that the trustees have deposited cash in the Berlin City National Bank in an amount sufficient to cover the assignee's claim.

The evidence discloses that the Berlin National Bank paid in interest on the treasurer's deposit in accordance with its bid. This interest was paid not only on the money legally deposited but also on money deposited above the statutory limits. The last interest payment credited by the bank was February 17, 1933. During the progress of the liquidation of the frozen assets by the trustees they have made four dividend payments of 5 per cent., each amounting to $3,233.76, the first three being paid directly to the county treasurer and the fourth being paid, one-half to the county treasurer and one-half to the Fidelity & Deposit Company of Maryland, assignee, as it in the meantime had discharged its surety bond by payment of the full amount due the County of Coos.

The defendants refuse to recognize the claim of the assignee that such money is impressed with a trust and refuse to recognize the claim of the assignee that it has a preferred claim against the said banks and trustees for the full amount of the illegal deposit, but insists that the assignee be treated as a general creditor and only entitled to the rights of a general creditor. This is the crucial question in the case.

Defendants' counsel at the beginning of their brief on the law admit that the county's deposits augmented the funds of the bank and were not lost by being commingled with the bank's general funds; that they were not dissipated. and were traced into the possession of the defendants, yet they say no trust was created. They give three reasons for their contention: (1) That the New Hampshire statute did not prevent the bank from receiving the deposits, but merely forbade the treasurer from making them in excess of a certain limit; (2) the agreement for the payment of interest on the deposits precluded the establishment of a trust; and (3) by its conduct, and because of the Bank Conservation Act, 12 U.S.C.A. § 201 et seq., the plaintiff has waived, or is estopped to claim, that a trust was created.

■ Taking up the defendants' contentions in the order enumerated, we must first consider the effect of that provision of the statute which provides that, if money in excess of the amount allowed by law be deposited, the bank shall be required to, "furnish a satisfactory bond, approved by the superior court to secure such deposit." The language of the statute is clear and unequivocal. The bank "shall" give security for an excess deposit. This is a positive requirement whether the county treasurer insists upon it or not, and a bank receiving such deposits does so illegally. It is charged with notice of the statute.

I cannot agree with defendants' contention that the New Hampshire statute does not prevent the bank from receiving excess deposits, but that it merely forbids the treasurer from making them in excess of a certain limit.

I rule that the bank received the excess deposit in violation of the law and took it impressed with a trust in favor of the County of Coos.

■ I agree that the payment of interest on a bank deposit usually connotes a general deposit and prevents its establishment as a trust fund. This is true with respect to the funds legally deposited by the county treasurer, but I hold that it does not extend to funds illegally deposited and illegally received by the bank. The bank by the payment of interest on the excess deposit could not convert illegal deposit into a legal one.

The defendants rely upon the case of In re Bogena & Williams, 7 Cir., 76 F.2d 950, in this case the District Court held that a trust relation existed from the fact that bankrupt funds were deposited in a bank not designated as a depositary for such funds. The decree of the District Court was reversed on two grounds; (1) That there was no prohibition against the bank receiving the deposit; and (2) failure to trace the funds into the possession of the conservator of the bank. The distinction between this case and the instant case is plain. In the Bogena Case the bank was not prohibited by law from receiving the deposit, but in the instant case, as I construe the New Hampshire statute, it was. The same is true of American Surety Co. v. Waggoner Nat. Bank. 5 Cir., 83 F.2d 99.

The third position taken by the defendants is that the County of Coos is estopped from claiming that the deposits are impressed with a trust and that the plaintiff, assignee, is bound by such estoppel. The evidence discloses that neither the county nor the plaintiff in this action entered a formal claim that the illegal deposit was impressed with a trust until this action was brought. The county did not waive any part of its claim, while other depositors waived 50 per cent. of their claims. This was ample notice that it was going to insist on the full amount of its claim being paid. The evidence does not disclose whether any formal proof of claim was filed with the conservator, but, if we were to assume that it was, the county treasurer (Taylor) was the proper person to file the same. He was acting in a dual capacity, and the county should not be prejudiced if he failed to act in its best interests but rather in the interest of the bank in an effort to pay as large a dividend as possible to its general creditors.

No equitable estoppel can arise from laches (Hale County, Texas v. American Indemnity Co., 5 Cir., 63 F.2d 275) or a misconceived act where all parties act with full knowledge and particularly if no one has been injured. In my view of the law, the illegal deposit never became the property of the bank and its general depositors never acquired any interest in it. To now hold that they have acquired an interest in it by estoppel is inequitable and works to the unjust enrichment of the general creditors to the injury of the county and its assignee.

One important question is whether or not the plaintiff has sufficiently traced the deposit through the conservator into the hands of the trustees and the Berlin City National Bank. I have already found that the funds have been sufficiently traced and defendants in their written argument admit that this is true, so there appears to be no necessity of citing authorities to this point.

In the following cases it was held that a trust was established. Allen v. United States, 1 Cir., 285 F. 678, 681, seems to be in point, the only difference being that in the Allen Case the bank was prohibited by statute from receiving the deposit, while in the instant case the statute provided that the bank must give security for any excess deposit. In the above case the superintendent of one of the Boston postal districts deposited postal funds in a bank in Boston which was not at the time an authorized depository for such funds. On this point the court says: "As the deposits were not only unauthorized, but prohibited by law, the Trust Company never had title to the money covered by them, but held it as a trustee ex maleficio, and if it can be traced into the possession of the commissioner it is charged with the same trust."

In American Surety Company v. Jackson, 9 Cir., 24 F.2d 768, 769, it appears that the city treasurer, who was also cashier of the National Bank, deposited city funds in the bank in violation of a state law whereby the bank was required to furnish a bond before accepting deposits of city funds. The court said: "If the city funds were lawfully deposited in the depository bank, the relation of debtor and creditor existed between the city and the bank, and it is well settled that neither the city nor those claiming under it can under such circumstances claim any preference over general creditors. On the other hand, if the deposits were made by the city treasurer in violation of the laws of the state, it is equally well settled that the bank became a trustee, and that the city, or those claiming under it, may recover from the receiver the amount of the trust fund, if less than the amount of cash coming into his hands at the inception of the receivership, unless it is made to appear that some portion of the trust fund had theretofore been paid out or dissipated by the bank. * * * We do not understand that this rule is controverted. Indeed, it is so firmly established by the decisions of this and other

courts that the question is no longer an open one."

In the First National Bank of Forsythe v. Fidelity & Deposit Co., 9 Cir., 48 F.2d 585, 587, the county treasurer deposited money in excess of the amount that could lawfully be deposited, which amount was limited to the amount of the bond furnished by the bank. The court said: "Here, there was an express direction from the board of commissioners to the county treasurer not to make deposits during his term of office in excess of the amount of penalty of the bonds approved by the board, and this explicit direction was wholly disregarded. The act of the county treasurer in making the excess deposits, and the act of the bank in receiving them were therefore clearly wrongful and in violation of law."

I find and hold that the amount of the two checks deposited by the county treasurer February 28, 1933, augmented the funds in (not of) the closed bank that came into the hands of the conservator to an amount in excess of that prescribed by law in the sum of $33,675.26.

The money so deposited in excess of the amount permitted by law never became the property of the bank and its general creditors acquired no interest therein. It has been sufficiently traced through the various enumerated channels into the hands of the trustees and by them turned over in cash to the Berlin City National Bank, and the same is impressed with a trust in the hands of that bank and the plaintiff, Fidelity & Deposit Company, of Maryland, assignee of the County of Coos, is entitled to recover from the last mentioned bank the sum of $10,102.59.

Counsel may present a decree in accordance with this opinion.