## JOSEPH v. VILLAGE OF DOWNERS GROVE.
### No. 6812.

Circuit Court of Appeals, Seventh Circuit.
May 17, 1939.

Rehearing Denied July 8, 1939.

Thomas H. Slusser, of Chicago, Ill., and Carl O. Bue, of Downers Grove, Ill., for appellant.

R. D. Thomason and Robert R. Hanley, both of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered August 26, 1938, in favor of the plaintiff, as Receiver of The First National Bank of Downers Grove, in an action to recover certain moneys claimed to have been erroneously paid to the defendant. The cause was tried by the court largely on a stipulation of facts with oral testimony on one feature of the case. The errors relied on arise out of rulings on evidence and failure to grant the defendant's motion for findings and judgment in its favor.

The First National Bank of Downers Grove (referred to herein as the Bank), a national banking association under the laws of the United States, was found to be insolvent and was closed by order of the Comptroller of the Currency on June 17, 1931. Prior to its closing, the Bank had been actively engaged in accepting deposits and doing a general banking business in the Village of Downers Grove, Illinois. Thereafter, a receiver for the Bank was duly appointed and proceeded to collect and liquidate its assets. The defendant is an Illinois Municipal Corporation and since the year 1917, has operated under the Commission Form of Government pursuant to the Illinois Statute.

The complaint proceeds on the theory that the defendant's treasurer, in his capacity as such, was a depositor of the Bank, and that defendant's funds in the Bank were and always had been a legal deposit; that the moneys sued for were the proceeds of securities of the Bank unlawfully pledged by the Bank to secure such deposit, and were therefore unlawfully paid to defendant and could be recovered. Defendant's amended answer denies that its treasurer was ever a depositor of the Bank; denies that its funds in the Bank were ever a legal deposit, and asserts that such funds in the hands of the Bank were at all times impressed with a constructive trust in favor of the defendant, because of violation by the Bank of the Illinois statute, prescribing the terms and conditions under which the Bank might accept deposit of defendant's funds; that the securities in question were not pledged to secure a bank deposit, but were pledged to secure the liability of the Bank to defendant as trustee of a constructive trust in favor of defendant, which pledge was entirely lawful and proper, and that the proceeds of sale of the securities in question were therefore properly paid to defendant and could not be recovered.

Section 51, Laws 1910, Sp.Sess. p. 37, Smith-Hurd Stats. c. 24, § 316, Par. 374, Chap. 24, Cahill's Illinois Revised Statute, 1931, authorizing municipalities to adopt the Commission Form of Government, provides: "In addition to the other duties now imposed by law upon the treasurer of any city or village, the said treasurer shall make his daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit as treasurer of said city or village, in one or more banks situated in said city or village, to be selected by the president of said council, the commissioner of accounts and finance, and the treasurer of such city or village, or by any two of them, and any such bank, before any such deposit is made therein, shall be required to enter into an obligation with the said council to pay into the treasury of such city or village interest on the monthly balances of such deposits at a rate to be fixed by the president of said council, the commissioner of accounts and finance, and the treasurer, or by any two of them, and which rate may be changed in the same manner—such rate to be not less than three (3) per centum per annum, and shall also execute a good (and) sufficient bond, with sureties to be approved by the president of the said council, and conditioned that such bank will safely keep and account for, and pay over said money."

The Bank and its officers at all times had full and actual knowledge of the fact that the defendant was operating under the Commission Form of Government, and of the existence of the Statute above quoted. At no time did the Bank execute or furnish any bond or enter into any obligation to pay interest on the funds of the defendant as required by this Statute. Without complying therewith, the Bank accepted funds of the defendant for deposit as such funds were, from time to time, turned over to it. The funds of the defendant so placed in the hands of the Bank were credited to the account of defendant's treasurer; were not kept separate and apart from other funds in the Bank, but were mingled with the general funds in possession of the Bank and were used for the general purposes of the Bank and were, at all times, subject to withdrawal on order of the defendant by check or draft properly drawn against the account. Withdrawals were made from time to time by the defendant from moneys to its credit in the account with the Bank and such withdrawals were paid by the Bank out of general funds in its possession,

the account thereupon being debited in the amounts so withdrawn.

Commencing about the year 1928, the Bank gave to defendant's treasurer, collateral to secure the funds of defendant in the account, the amount of the collateral being increased and decreased from time to time. On January 24, 1931, the Bank turned over to defendant's treasurer, securities in the form of various bonds in the aggregate sum of $119,500, as security for funds which had been and which might in the future be delivered to the Bank. Such securities were deposited by the treasurer in a safety deposit box in the Bank, the key to the same retained by the treasurer, with a master key in the possession of the Bank. The use of both keys was required to enter the box. Subsequent to the deposit of these securities in the safety deposit box, the Bank, with the cooperation and consent of the treasurer, removed from the box certain of these securities in the aggregate par value of $13,000. These securities so removed were sold by the Bank and the proceeds thereof retained by it as a part of its general funds.

On the 17th day of June, 1931, the treasurer, in cooperation with the Bank, opened the safety deposit box, removed the securities then remaining therein and took the same to the Continental Illinois Bank and Trust Company of Chicago. The treasurer was accompanied by a representative of the Bank who took with him additional securities of the par value of $30,000, which securities were a part of the general assets of the Bank. The securities carried by the treasurer and the additional securities carried by the representative of the Bank were all deposited on June 17, 1931, with the Continental Illinois Bank and Trust Company under an escrow agreement. [1] On the same day the Bank closed, with a credit balance on its books, in the sum of $81,390.53, due to defendant's treasurer.

Subsequent to the closing of the Bank, defendant's treasurer made demand upon the plaintiff (Receiver of the Bank) and upon the Continental Illinois Bank and Trust Company, as escrowee, under the Escrow Agreement for the sale of the securities held by the escrowee and for the application of the proceeds of such sale to the credit balance due defendant's treasurer. The sale of such securities was authorized by the Comptroller of the Currency of the United States and by the District Court pursuant to petitions presented by the plaintiff. The securities were thereupon sold and out of the proceeds payments were made to the defendant at various times in the aggregate amount of $81,390.53, being the amount of defendant's funds in the Bank at the time of its closing.

On January 7, 1936, plaintiff made demand on defendant for the repayment of such moneys, which demand was refused, and, thereupon, suit was instituted on January 23, 1936. Prior to the entry of the

---

[1] "Continental Illinois Bank and Trust Company,

"231 South La Salle Street,

"Chicago, Illinois

"Attention: Trust Department.

"Gentlemen:

"We hereby deliver to you the following securities: $136,500.00 Par Value of Sundry Bonds listed on attached Schedule A, which we direct you to hold in escrow to secure any and all deposits heretofore made with us by J. R. Ferguson, Treas. of Village of Downers Grove, Ill. of monies and funds belonging to said Treasurer or chargeable to him, or for which he is accountable as such Treasurer and any and all deposits of any such funds and monies that he may hereafter make with us. And in the event that such monies and funds, or any part thereof, are not paid to said Village Treas. upon demand, then in each and every such event we hereby give you full and irrevocable power and authority to sell the said securities or any part thereof, without advertising and without further demand, and without giving notice to us or anyone else, at any public or private sale or sales, or at any broker's board, and the net proceeds thereof, after the payment of all costs, expenses, attorneys' fees, and your charges growing out of or connected with the said securities deposited as aforesaid with you, and the care, safekeeping and delivery thereof, shall be applied to the payment of any and all said deposits with us and to the payment of any and all liabilities and obligations, whether due or not, of us, to the said Treasurer of Village of Downers Grove, Illinois and the surplus, if any shall be paid to us.

"Prior to default in payment on our part, the said securities shall be subject to the joint order of said Treas. of the Village of Downers Grove as aforesaid, and ourselves.

"Dated June 17th, 1931.

"First National Bank of Downers Grove.

"By John W. Hughes [Signed.]

Its President."

judgment appealed from, various dividends were paid to depositors of the Bank, aggregating 57% of the total deposit liabilities of the Bank. No dividends were ever paid to the defendant. Judgment was entered against the defendant in the amount of $40,079.32, which amount was arrived at by deducting from the amount of the account at the time the Bank closed the amount of the dividends which defendant would have received as a general creditor of the Bank, together with certain interest items.

Plaintiff, in its replication to defendant's answer, denied that the proper officials of defendant had legally selected the Bank as the depositary in which defendant's treasurer should make his deposits. On this issue, oral and documentary evidence was offered by defendant and admitted subject to objection by plaintiff. Later, on motion of plaintiff, all this evidence was stricken from the record as incompetent.

It is the defendant's contention that the Bank violated the Illinois Statute, in accepting for deposit public funds of the defendant without furnishing the indemnifying bond and entering into the obligation to pay interest prescribed by the Statute, and that by reason of such violation, defendant's funds never became legal deposits and assets of the Bank, with the result that they were impressed with a constructive trust in its favor. Admittedly, this contention constitutes the sole foundation upon which the defense is predicated, and its failure is fatal. Plaintiff replies to this essential contention by denying that it was under any statutory obligation to furnish the defendant with an indemnifying bond for the reason that no proper or legal selection of it as a depositary of the defendant's funds was made by defendant's officials as required by Statute. If, however, a proper selection was made, plaintiff, while not admitting, does not seriously dispute but what a trust relation was created by reason of the Bank's failure to supply the statutory bond. It is further the contention of the defendant that the trust relation having been established, that the securities pledged by the Bank constituted a lien in favor of the defendant and that the funds realized by the escrowee from the sale of the pledged securities were legally paid to the defendant in satisfaction of the Bank's trust obligation, and that, therefore, no recovery of such funds can be had. On the other hand, it is contended by the plaintiff that even though the trust

relation be found, that the Bank was without authority to pledge its securities, that no lien attached to the same and that, therefore, the funds realized from the sale of such securities were illegally paid to the defendant and that the court below properly found in plaintiff's favor. It is apparent that the first question which we must determine is whether there was a proper selection of the Bank as a depositary by the President, the Commissioner of Accounts and Finance and the Treasurer of defendant as is required by the Illinois Statute. Defendant sought to establish this selection by parol evidence, and a determination of the question depends upon the propriety of such evidence. Plaintiff contends that the only proper proof of such selection would be an official written record made at the time of the selection and that oral testimony is incompetent to establish such fact.

Subject to objection, the court heard the oral testimony of defendant's Mayor, Commissioner of Accounts and Finance and Treasurer for the period of May, 1927 to May, 1931, and of the same officials who served from the latter date to May, 1935. All of these officials testified that the Bank was duly selected as defendant's depositary —the former group of officials that they met in the Village Office in May, 1927, and made such selection and the latter group of officials that they met in the Village Office in May 1931, and again made such selection. Defendant's clerk (who has continuously served as such from the year 1917 down to the present time) testified of his own knowledge that the selection of the Bank was made as testified by both groups of city officials. The Clerk also testified that he made no note or memorandum in defendant's record because the action was not a regular council matter. Defendant's former treasurer testified that he informed the Bank of its selection as a depositary.

On March 21, 1938, during the hearing of the cause, defendant's council passed a resolution, directing its Clerk to amend defendant's record to show the action taken by its former officers in May, 1927, and again in May, 1931, in conformity with their oral testimony, in selecting the Bank as a depositary. Defendant's clerk testified of his own knowledge as to the facts stated in the amending resolution and that the records were amended as directed by the resolution. This record was admitted in evidence subject to objection. At the conclusion of the hearing, on motion of the plain-

tiff, the oral testimony, as well as the amended record, was stricken as being incompetent. Certain documentary evidence was admitted which defendant argues was corroborative of the oral testimony, but we regard it as having little, if any, bearing upon the question.

City of Centralia v. McKee, 267 Ill.App. 585, and the People ex rel. v. Chicago, & E. I. R. Co, 306 Ill. 402, 138 N.E. 127, are the authorities cited and relied upon in support of the court's action in striking the oral testimony. The former case construed the statute in question and held that the officers empowered by the statute to make the selection were powerless to act "except together and as a body." We find nothing in this case to the effect that oral testimony is inadmissible to establish such act—in fact, no such question was involved. The other case, 306 Ill. 402, on page 412, 138 N. E. on page 131 states: "Where a record of its proceedings is required to be kept, such record is the only lawful evidence of its action, and it cannot be contradicted or added to by parol. [Citing cases.]"

This language furnishes rather meager, if any, support to plaintiff's position for the reason that the statute in question contains no requirement that a record of the action of the city officials be kept. The only provision in the City Ordinance cited by plaintiff and which it is claimed required such a record is: "He (referring to the Clerk) shall keep a list of all committees and department superintendents, and of the business from time to time referred to them respectively, and a memorandum of all reports made by them."

■ We are unable to find anything in the language thus quoted which would require to be kept a record of the matter now under discussion. If the Clerk was not required to keep such a record, and we are convinced he was not, then we are of the opinion that the action of the officials in selecting the Bank as a depositary might properly be shown by parol evidence. The court in Bank of United States v. Dandridge, 25 U.S. 64, 12 Wheat. 64, at page 69, 6 L.Ed. 552, said: "We do not admit, as a general proposition, that the acts of a corporation, although in all other respects rightly transacted, are invalid, merely from the omission to have them reduced to writing, unless the statute creating it makes such writing indispensable as evidence, or to give them an obligatory force. If the statute imposes such a restriction, it must

be obeyed; if it does not, then it remains for those who assert the doctrine to establish it by the principles of the common law, and by decisive authorities. None such have, in our judgment, been produced."

To the same effect is United States v. Fillebrown, 32 U.S. 28, 7 Pet. 28, 8 L.Ed. 596, and 19 R.C.L. 903. In State ex rel. Rankin v. Madison State Bank, 77 Mont. 498, 251 P. 548, the court was concerned with a similar question, and 77 Mont. on page 503, 251 P. on page 550 said: "The rule against oral evidence to vary the terms of a writing therefore does not apply, and it is generally held that, under such circumstances as those before us, and under such statutes as ours, the mere failure of the clerk of the board to enter the action of the board in the minutes does not affect the validity of the action actually taken, but that such action may be proved by parol testimony and, when so proved, has the same effect as though shown by a minute entry."

■ We conclude, therefore, that the court was in error in holding the oral testimony incompetent. Without going into detail, as to the oral testimony of the various witnesses, it is sufficient to state that we have read it and are convinced that it establishes the fact that a proper and legal selection of the Bank was made as the defendant's depositary. No doubt, oral testimony offered to meet an exigency arising in a law suit, such as we find here, should be received with caution, and perhaps viewed with suspicion, especially where the testimony concerns an event alleged to have happened many years in the past. If such testimony comes from a responsible source, however, is positive in its character as it was here, especially when not contradicted, we see no reason why it should not be accepted as establishing the fact. Certainly, a court is not justified in arbitrarily refusing it.

Having concluded that the court erred in striking such testimony, and that the action of the proper city officials in selecting a depositary, was established, we must now consider the effect to be given to the action of the Bank in receiving the public funds of the defendant without furnishing an indemnifying bond as was required by the statute.

Defendant denies that its treasurer was a depositor of the Bank, that its funds in the Bank were ever a legal deposit, and asserts that such funds in the hands of the Bank were at all times impressed with a

constructive trust in its favor, and that being so impressed, the securities which were pledged to secure said fund became a lien therefor. The case of People ex rel. v. People's State Bank of Maywood, 354 Ill. 519, 188 N.E. 853, clearly sustains defendant's contention to the extent that a deposit of public funds in a bank which has failed to furnish a bond of indemnity as required by statute, is impressed with a constructive trust. There the bank furnished the indemnifying bond, but the deposits made by the city were in excess of the principal of the bond and it was as to this excess that the court was dealing. The Statute in question was reviewed and the court held mandatory the provision requiring the bank "shall also execute a good and sufficient bond with sureties to be approved by the President of said Council, and conditioned that such bank will safely keep and account for and pay over said money." On page 530, of 354 Ill., 188 N.E. on page 858, it said: "The omission to observe a mandatory provision of a statute or ordinance renders unlawful the act or proceeding which it governs or to which it relates. People ex rel. v. Graham, 267 Ill. 426, 108 N.E. 699, Ann.Cas.1916C, 391. A deposit is wrongful and unlawful when made by the custodian of public funds in a bank which, owing to its failure to furnish the bond of indemnity required by an ordinance passed pursuant to statutory authority, is not qualified to receive the deposit."

It likewise held the funds deposited in excess of the penalty of the indemnifying bond as wrongful and unlawful, and that the receipt of such funds by the bank does not give rise to the relation of debtor and creditor. It said: "Such funds, deposited in violation of law, do not become assets of the bank, but are impressed with a constructive trust. [Citing cases.]" Other authorities are cited which hold that national banks are subject to such rule. [2]

■■ It will be observed that thus far we have found ourselves in agreement with defendant's theory, but we have now reached the point where we must disagree. The law is thoroughly established that under the National Banking laws, a national bank has no power to pledge its assets to secure a deposit of public money of a state, or of a subdivision thereof, unless it is located in a state wherein such power is granted. It is equally well settled that the State of Illinois has not conferred upon its banks such power as it relates to the deposits of political subdivisions of the state; that a pledge so made is ultra vires and that the receiver of an insolvent national bank is entitled to recover them unconditionally for the benefit of the general creditors of the bank. [3]

Defendant, conceding the rule in this respect, undertakes to distinguish the instant case on the novel theory that, the funds in question were not legal deposits; that the law having created a constructive trust, the pledge was made as security therefor and that the bank has the authority to pledge its assets for such purpose. It follows from this, so it is argued, that the pledged assets became a lien to secure such trust funds and that, therefore, the proceeds of the same were properly paid to the defendant in the discharge of the trust obligation.

■ Bank deposits have been described as general and special (Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203), the former where the relation between the bank and the depositor is that of debtor and creditor—the latter where there is established a relation other than debtor and creditor. We think it is in the latter category that the transaction here must be designated—that is, the deposits made by the defendant on account of the constructive trust theory were of a special nature. We do not think, however, that importance can be attached to any particular manner employed in designating the funds which were left with the Bank and which, admittedly, were regarded and intended by the parties as a general deposit. The reason and logic of the rule which prohibits the pledging of securities is applicable in the same manner and to the same extent irrespective of such designation. In People ex rel. Nelson v.

[2] Capitol Nat. Bank of Lincoln v. First Nat. Bank of Cadiz, 172 U.S. 425, 19 S.Ct. 202, 43 L.Ed. 502; Board of Commissioners v. Strawn, 6 Cir., 157 F. 49, 15 L.R.A.,N.S., 1100; American Surety Company v. Jackson, 9 Cir., 24 F.2d 768; Fuman v. State of South Dakota, 8 Cir., 29 F.2d 776; Coos County, N. H. v. Berlin National Bank, D.C., 21 F.Supp. 523; American Legion Post No.

279 v. Barrett, 371 Ill. 78, 20 N.E.2d 45.

[3] City of Marion v. Sneeden, Rec. et al., 291 U.S. 262, 54 S.Ct. 421, 78 L. Ed. 787; La Parr et al. v. City of Rockford, Illinois, 7 Cir., 100 F.2d 564; Granzow v. Village of Lyons, Illinois, 7 Cir., 89 F.2d 83; People ex rel. Nelson v. Wiersema State Bank, 361 Ill. 75, 197 N.E. 537, 101 A.L.R. 501.

Wiersema State Bank, supra, the court 361 Ill. on page 87, 197 N.E. on page 542, 101 A.L.R. 501, said: "A bank incorporated under legislative authority, like other corporations so organized, has only such powers as are expressly granted and as are necessarily implied from the specific grant. Every power not clearly granted is withheld. Enumeration of powers granted implies exclusion of all others, and any ambiguity in the terms of a grant operates against the corporation and in favor of the public. If a power claimed is withheld, the withholding is to be regarded as a prohibition against its exercise."

And again, 361 Ill. on page 92, 197 N.E. on page 544, 101 A.L.R. 501: "Any power the exercise of which will not stand the light of publicity cannot be allowed to banks. The argument that a bank has, as an implied power, one that if used openly is ruinous and must be resorted to clandestinely if at all, refutes itself. Banks are intended above all else to be the dependable agents of thrift and commerce. To that end, express powers have been conferred on them. It would violate all rules of construction to construe into their implied powers one that would go so far to defeat the purpose of the express powers."

█ If a bank is without authority, either express or implied, to pledge its assets to secure the deposit of public funds, the question naturally arises as to how it could legally pledge its assets to secure the beneficiary of a constructive trust. That no such power exists seems obvious, and in the absence of such, its act is ultra vires and void in one instance the same as in the other.

In La Parr et al. v. City of Rockford, Illinois, supra, this court had before it the authority of a national bank to pledge its assets to secure the deposit of public funds and the effect to be given to the action of the Comptroller and Receiver in permitting such assets to be used in the payment of such funds upon the bank's insolvency. After reviewing numerous authorities pertaining to the question, we said on page 567: "It is of no moment that the bank and the city, in the original transaction, and the comptroller and the receiver on the one hand and the city on the other, in their transactions, acted in the utmost of good faith. All of the parties assumed that the pledge was valid. Their assumption was incorrect, but that it was erroneous was not authoritatively established by the Supreme Court until after the payment of the deposit to the city. Immaterial, however, is the motive that inspired the parties, for, under the law, the pledge was invalid, and no act of the bank, the receiver or the comptroller could validate it."

While no theory of a constructive trust was advanced in that case, yet we think that the language there employed is equally applicable and pertinent to the instant situation.

The courts recognize a constructive trust as giving rise to a claim for preference under certain circumstances and conditions. As was said in People ex rel. v. State Bank of Maywood, supra, 354 Ill. on page 532, 188 N.E. on page 859:

"The constructive trust will attach to successive substitutions so long as they can be identified as the product, either as a whole or in part of the original assets, and the superior rights of a bona fide purchaser have not intervened. A trust, however, necessarily involves a relationship between two persons with respect to certain property, and unless the claimant shows, in the case, for example, of an insolvent bank, that the receiver has possession of the whole or a part of the property or its proceeds, the claimant does not place himself in a relation to the insolvent's estate which differs from that of an ordinary creditor, and, as a consequence, no trust can be declared or enforced. * * *

" * * * and a trust fund traced into a bank account, if its identity can be established, and no superior rights of innocent parties have intervened, will be held for the benefit of the cestui que trust. The question in every case where it is sought to trace trust property is whether it can be identified in its original or altered form."

Many other authorities are available as to the requirements imposed upon a cestui que trust in the establishment and enforcement of a claim for preference, a citation or discussion of which is irrelevant for the reason that the defendant has proceeded upon a theory other than that recognized in such decisions and which render such of no consequence insofar as concerns the issue and argument here presented.

No contention is made that the funds deposited in the Bank were used in the purchase of the securities pledged. In fact, the record discloses to the contrary. The funds were intermingled with the general funds of the Bank and the assets pledged were purchased from such general funds,

and it seems, at least, a sizeable portion of such assets were purchased prior to the deposit of defendant's funds.

The contention advanced by the defendant, if adopted, would permit the utilization of an unlawful act on the part of a bank as a means to legalize another act which is admittedly ultra vires and void. In other words, a bank which acts in conformity with law is without power to pledge its assets, while the bank which fails to comply may do so on the theory that the law, because of noncompliance therewith, has designated the relation existing between the bank and the depositor something other than that which ordinarily attaches. While we have held that the failure of the Bank to furnish a bond of indemnity resulted in the creation of a relationship different from that which was intended by the parties, it does not follow that the authority of the Bank, in pledging its securities was thereby extended. We know of no rule of law or common sense by which a bank, or any other corporation, by neglect or failure to do that which the law requires, can acquire or have thrust upon it, authority, which is otherwise denied. "The long-established rule is that a corporation is a creature of the law, having no powers but those which the law has conferred upon it." People ex rel. Nelson v. Wiersema State Bank, supra.

The bank was without authority to pledge its assets and judgment in favor of the plaintiff for a restoration of the proceeds thereof was proper.

The same is affirmed.