· 471 P.2d 71

**Glyndora DEY, Plaintiff,**

**v.**

**James M. CUNNINGHAM, Judge of the District Court of the Fifth Judicial District of the State of Idaho, In and For County of Twin Falls, Defendant.**

**No. 10637.**

Supreme Court of Idaho.

June 29, 1970.

May, May & Bennett, Twin Falls, for plaintiff.

Robert M. Robson, Atty. Gen., and Daniel A. Slavin, Deputy Atty. Gen., Boise, for defendant.

SHEPARD, Justice.

This is an original proceeding in this Court wherein plaintiff seeks a writ of prohibition to prevent a district judge from executing a contempt sentence.

Plaintiff and her former husband were divorced by decree of the district court of Twin Falls County in 1969. The divorce decree provided that the child of the parties, then of the age of approximately two and one-half years, was placed in the custody of her mother, the plaintiff herein. The father of said child was granted "the right to visit said child at reasonable times and places." Additional visitation rights were granted the father for two weeks during the summer months and six weeks during the summer months following the entry of the child into school.

Shortly after the divorce decree the visitation rights of the father became the

subject of considerable acrimony between the parties, and the father sought the assistance of the court in enforcing his visitation rights while the mother on the other hand sought the assistance of the court in enforcing the payment of child support. The record discloses that the parties were before the court several times and it is not surprising that the district judge rather obviously lost patience with the parties and their lack of ability to agree among themselves as to reasonable visitation rights. As a culmination of the disputes between the parties the trial court at a hearing orally advised the parties and advised counsel for both parties by letter:

"It is my belief that what Mr. Dey seeks in his motion, that is, that he have custody or care of his child every other weekend from 5:00 o'clock Friday to Sunday at 5:00 o'clock and on certain holidays, is nothing more than reasonable visitation. It's my further belief that this is absolute minimum visitation that this man should have for his own child.

"I'm not making any pre-judgments, but if these parties should appear before the Court again and if it should appear that Mr. Dey has been denied reasonable visitation—and I'm saying that reasonable visitation in my mind is what he seeks—I would have no hesitancy in finding the person responsible for this denial in contempt of Court."

Both parties sought citations of contempt against the other. At a hearing held upon the father's motion for a contempt citation for failure to grant visitation rights, testimony was taken. The mother was questioned regarding the previous opinion of the trial court rendered orally from the bench as hereinabove set forth:

"Q And you heard Judge Cunningham give his opinion as to what he felt was reasonable times and places, didn't you? Didn't he give an opinion on November 10, 1969 in this court?

*       *       *       *       *       *

"A He said something, a comment, but I didn't know it was going to be final like that.

"Q Well, didn't he give you an indication that he felt in his own opinion that visitation should be extended to every other weekend?

"A Possibly.

*       *       *       *       *       *

"Q You don't deny that, do you?

"A No, I won't deny it.

*       *       *       *       *       *

"Q So you are very much aware of the fact that he [the father] did want visitation privileges every other weekend; right?

"A Yes.

"Q And you were made aware that in this court on November 10, the Court, the Judge, gave his opinion and that was of visitation every other weekend, in his opinion, was reasonable visitation privileges. You are aware of that?

"A Yes."

Perhaps the entire attitude of the mother and father and the crux of this controversy is summarized by one portion of the mother's testimony:

"Q And I would like to know why we can't, you and your husband, can't get together and work out something more reasonable. I'm sure that Mr. May gets tired of hearing from me. Why can't we do this? Why can't we work out something where we have one weekend per month and something else worked out between you and Mr. Dey?

"A Because he seems like he always likes to take advantage and thinks he's getting on the better side.

"Q *Actually, what you two people are doing is just using this child as a wedge back and forth to fight your own personal battles?*

"A Right.

"Q You admit that?

"A Yes, and it's not right to her.

"Q It sure isn't right to her. In fact, that's about the worse thing that parents can do?

"A Right."

At the conclusion of the hearing the court stated:

"It is apparent to me after the hearing one week ago today that the reasonable visitation provisions of the divorce decree filed October 29th—and I hope supplemented by my definition of reasonable visitation on November 10th —were violated and I think knowingly and wilfully violated by the defendant on at least one occasion, and probably on several occasions.

"There is no question in my mind that the defendant, for her failure to strictly follow the terms of the decree, is and has been guilty of contempt of Court *and the record may show that I find her to be in contempt of Court.*

\*　　\*　　\*　　\*　　\*　　\*

"The parties will have an opportunity to purge themselves of contempt in one of two ways: They may spend four days each in the Twin Falls County jail, beginning at 7:00 p. m. on Friday, March 20, and ending at 7:00 p. m. on Sunday, March 22nd, and again submitting themselves to the Twin Falls County Sheriff for incarceration in the Twin Falls County jail at 7:00 p. m. on Friday, February 27, and they will be released at 7:00 p. m. on Sunday, March 1st. That is one way the parties may purge themselves.

"Or if they desire, they may themselves or through their counsel present to the Court a written agreement spelling out in the minutest detail the custody and visitation rights they are willing to abide by. Now, when I say the 'minutest detail,' I mean just that. And if that written agreement is presented to the Court and approved by the Court on or before Monday, February 16, one week from today, the approval will amount to a purging of the finding of contempt."

From these orders of the district court plaintiff herein brought her petition for a writ of prohibition to arrest the imposition of the penalty for contempt. The writ was granted pending further hearing and for the reasons hereinafter expressed the writ will be quashed.

■ I.C. § 7–401, defines a writ of prohibition as:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

I.C. § 7–402, provides that a writ of prohibition may be issued "to an inferior tribunal \* \* \* where there is not a plain, speedy and adequate remedy in the ordinary course of law." It is clear that for a writ of prohibition to issue it must be shown that the court acted in excess of his jurisdiction and that no other adequate legal remedy existed. Smith v. Young, 71 Idaho 31, 225 P.2d 466 (1950).

■ It is also clear that the plaintiff sought the jurisdiction of the court in her voluntary appearance and counterclaim in the original divorce action. It is further clear that a district court has not only jurisdiction in divorce proceedings, but continuing jurisdiction over questions involving the custody of minor children. I.C. §§ 32–715 and 32–705; Gifford v. Gifford, 50 Idaho 517, 297 P. 1100 (1931).

■ Where as here, the court acted within its jurisdiction a writ of prohibition was improperly sought, improvidently issued and will be quashed. Any review of an already issued contempt order must be by writ of review or by appeal. Jones v. Jones, 91 Idaho 578, 428 P.2d 497 (1967); Mathison v. Felton, 90 Idaho 87, 408 P.2d 457 (1965).

■■ On the basis of the record presented herein and because further proceedings will obviously be held in the lower court, we are constrained to make the fol-

lowing observation. The plaintiff herein claims error in the trial court's determination as to what constituted reasonable visitation rights. There is voluminous evidence upon which the trial court could and in our opinion did correctly base his determination of what constituted reasonable visitation rights. The trial court orally indicated to plaintiff herein what he, the court, believed to be reasonable visitation rights. Plaintiff herein was adjudged to be in contempt of court for failure to obey the decree of the court as orally interpreted by the court. While we feel such interpretation was made clear to the plaintiff in open court and that she deliberately violated said order, we do not approve of the court's practice. We feel it better practice for the court by written order to specifically delineate in detail what are reasonable visitation and custodial rights. We do not approve of the methodology used by the trial court in suggesting that the parties could purge themselves of the contempt order by entering into an agreement among themselves controlling the custodial and visitation rights. While such might appear on the surface to have a very salutary and practical effect in resolving the dispute, obviously in this case it did not.

As hereinabove stated, the jurisdiction of the trial court over child custodial and visitation rights is a continuing one and should be exercised by the court in such detail and specificity of order as may be necessary to carry out the intent of the court. We can and do readily understand the impatience and outrage felt by a district court in such a position when faced with a parental attitude as is evident here. The practice of utilizing a minor child as a shuttlecock to perpetuate a quarrel between former husband and wife is one we cannot too strongly condemn. It is, however, a practice with which district judges can and should deal strongly and forth-rightly. Their orders should, when necessary, be clear and concise and they should not be slow in exercising their contempt powers to enforce their orders.

The alternative writ of prohibition heretofore issued is quashed. No costs allowed.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.