534 P.2d 471

Margie ISAGUIRRE, Plaintiff-Respondent,

v.

Ben ECHEVARRIA, Defendant,

and

Josefa Echevarria, Defendant-Appellant.

No. 11659.

Supreme Court of Idaho.

April 18, 1975.

---

17. 94 Idaho 257, 486 P.2d 268 (1971).

18. See I.C. § 28–2–715.

———◆———

Edith Miller Klein, Boise, for defendant-appellant.

Richard B. Eismann, Homedale, for plaintiff-respondent.

DONALDSON, Justice.

This appeal places in issue the determination of the trial court that respondent Margie Isaguirre is entitled to a $1,500.00 real estate broker's commission for her part in the sale of the Echevarrias' Owyhee County ranch. For the reasons set forth below, the decision of the trial court is affirmed.

On January 25, 1971, the appellant, Josefa Echevarria, and her now-deceased husband signed a Receipt and Agreement to Purchase for the purpose of selling their ranch to a Mr. and Mrs. Hardy for $30,000.00. Typed into the appropriate blanks on the document were provisions for a down payment of $5,000.00, monthly payments of $100.00, and annual interest payments. A broker's commission of $1,500.00 was written in ink in the proper blank in a separate part of the agreement form.[1] The document was not notarized.

---

1. The commission clause reads as follows with the script type indicating handwriting in the original contract:

"For valuable consideration I/we agree to sell and convey to the Purchaser the above described property on the terms and conditions hereinabove stated and agree to pay the above named agent a commission of *Fifteen Hundred Dollars & no/100 (1500.00)* Dollars for services rendered in this transaction. I/we acknowledge receipt of a copy of the earnest money receipt bearing my/our signature and that of the Purchaser named above. In case the Purchaser fails to comply with any of the conditions of this Agreement, then one-half of the earnest money receipted for shall be retained by the broker, provided the amount to the broker does not exceed the agreed upon commission due and the balance shall be paid to the undersigned.

Dated this *25* day of *Jan,* 1971.

*Ben Echevarria*
*Josefa Echevarria*    Seller"

The respondent real estate broker was, at the time of the agreement, the daughter-in-law of the appellant. Respondent contends that she was orally engaged by the appellant to arrange the sale of the ranch in question. Mrs. Isaguirre placed an ad in a local newspaper and was subsequently contacted by the Hardys. She showed them the land, and later had the document in question prepared.

Testimony at trial indicated that at the time of the signing both the appellant and her husband were ill and elderly. Moreover, both were far from proficient in reading the English language.

Also during the trial, respondent and Mrs. Hardy testified that respondent's husband (at that time) read the entire contract to the appellant in Basque. John, the husband, testified that he did not translate the document to his parents and had in fact been in the barn milking the cows during the signing of the document.

On or about February 4, 1971, the appellant's other son, Pete, after a conversation with the appellant, told Mr. Hardy that the contract was unacceptable to his parents and would therefore have to be rescinded. Hardy then sought and received from respondent a refund of the $500.00 earnest money he had given her. Pete then arranged a second agreement with the Hardys for sale which included $150.00 monthly payments, semi-annual interest payments, and a $5,000.00 down payment, but had no provision for broker commissions. This second agreement was accepted by the Echevarrias as sellers and the Hardys as buyers.

Pete testified that the terms set forth in respondent's agreement were not acceptable to the appellant once they had been explained to her by Pete following the signing of the first agreement. Pete further testified that his efforts and not respondent's newspaper ad, first sparked the Hardys' interest in the ranch.

Appellant was unable to testify at trial due to illness. An affidavit filed in support of a motion for new trial states that she had not agreed to pay a commission, the respondent had already received a large sum from appellant, and respondent had misled appellant as to the terms of the agreement. This was the reason for the rescission of the first agreement with the Hardys.

Respondent subsequently brought this action for the $1,500.00 broker commission.

The trial court found that John, respondent's former husband, had read the contract terms to his parents. The court then concluded as a matter of law that the first Receipt and Agreement to Purchase was a valid enforceable agreement as to the payment of the real estate commission. Judgment was subsequently entered for respondent on July 17, 1973. A motion for new trial was filed July 26, 1973, containing two grounds for the new trial. New counsel filed an amended motion for new trial on November 20, 1973, with three additional grounds. The court did not consider the amended motion because it was not filed within the time for such motions. The court denied on its merits the original motion for new trial.

The primary contention by the appellant as to error by the trial court focuses on the first agreement signed by appellant and the Hardys. The trial court used the commission clause in that agreement to meet the statutory provisions requiring a writing as evidence of such brokerage arrangements. The appellant argues that since the agreement to purchase was both unenforceable [2] and rescinded, the commission clause is without effect. Moreover, appellant continues, the deviation between the terms of the first and second agreements indicates that the respondent had not secured a buyer prepared to meet the terms desired by the appellant. By failing to do this, Mrs. Isaguirre did not fulfill her obligation as broker.

---

2. Due to the failure of the parties to have the document notarized.

Because of the provisions of I.C. § 9–508, the general rule in Idaho has been that a real estate broker cannot collect a commission on an oral engagement by the client or on a *quantum meruit* theory. Brace v. Johnson, 45 Idaho 327, 262 P. 148 (1927); Weatherhead v. Cooney, 32 Idaho 127, 180 P. 760 (1919). The statute reads as follows:

> "No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative. [1915, ch. 131, § 1, p. 287; compiled and reen. C.L., § 6012; C.S. § 7979; I.C.A., § 16–508.]"

Thus, something beyond an oral contract is needed to support an award of a commission to Mrs. Isaguirre.

This Court faced a similar situation in Homefinders v. Lawrence, 80 Idaho 543, 335 P.2d 893 (1959). In that case the appellants had orally employed the respondent broker to arrange a trade of their acreage for a business property. After the respondent located a party willing to enter such an exchange, the appellant signed an exchange agreement which carried a rider which provided as follows:

> "I hereby ratify and confirm the employment of Homefinders Real Estate, real estate broker, to procure a purchaser for my property above described and in consideration of services performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $750.00 ($200.00 of which is hereinabove receipted for as earnest money deposited) to be paid in mo. installments."

After the appellant refused both to carry out the exchange and to pay respondent his commission, the respondent brought suit. The situation was discussed by the Court as follows:

> "[A]ppellants contend that respondent may not recover a broker's commission since it did not have a written listing contract, but only oral employment, to find a purchaser of appellants' property, citing I.C., 9–508, which reads: [See above.]

> "Here, however, respondent's first cause of action is not dependent upon any contract meeting the requirements of I.C., § 9–508, obligating appellants to pay for respondent's services to be rendered in finding a purchaser; rather, respondent's action is predicated upon the promise of appellant John R. Lawrence to pay a broker's commission to respondent for its services rendered, evidenced by the rider hereinbefore set out, made after rendition of those services. Moreover, the later written instrument is presumptive evidence of a valid consideration, I.C., § 29–103, and the burden rested upon appellants to avoid the instrument, I.C., § 29–104.

> "Appellant Lawrence, by such written instrument, agreed to pay for respondent's services already rendered; it is unrelated to any oral contract to pay a commission for services yet to be performed. Simply stated, the action is predicated on the theory of respondent's rendition to appellants of past valuable services,—not services to be performed in the future,—and the latter's written promise to pay therefor. Such a written acknowledgment of services and promise to pay therefor are held to satisfy the requirement of the Statute of Frauds of like or similar import as I.C. § 9–508. [Citations omitted.]" 80 Idaho 543, 548–9, 335 P.2d 893, 896.

The primary issue, then, was whether the prior services provided sufficient consideration to support the acknowledgement of the obligation.

In finding sufficient consideration, this Court in Homefinders v. Lawrence, *supra,* utilized the following quotation from the Washington Supreme Court of Muir v. Kane, 55 Wash. 131, 104 P. 153 (1909):

" 'The appellants contend that the writing relied upon by the respondent is insufficient under the statute; that it is not an agreement authorizing the respondent to sell the real property described for compensation or commission, nor does it authorize or employ the respondent to sell real estate at all. * * * It is clear that this writing was not intended as an agreement authorizing the respondent to sell the real property mentioned. In fact it was executed after that service had been performed, and is an agreement in writing to pay a fixed sum for a past service, not a service to be performed in the future. The question for determination is its validity as a promise to pay for a past service. Looking to the instrument itself, there is nothing on its face that in any manner impugns its validity. It is a direct promise to pay a fixed sum of money for services rendered.' " 80 Idaho 543, 550, 335 P.2d 893, 897.

In any given factual situation the particular language of the proferred contract clause will determine whether it will be accepted as an acknowledgement of an obligation. This is illustrated by Robertson v. Hansen, 89 Idaho 107, 403 P.2d 585 (1965). In that case the broker's employment contract did not contain a description of the property to be sold and the broker was forced to base his action for an unpaid commission on a clause in the sales agreement. The clause read as follows:

"The First Parties hereby represent that they retained the services of Gilbert Robertson, real estate agent of Caldwell, Idaho, in arranging the within sale to the Second Parties. The First Parties covenant that they shall pay the said Gilbert Robertson any fee or commission to which he may be entitled by reason of this sale, and the First Parties further covenant to hold the Second Parties [harmless] from any liability to the said Gilbert Robertson for such fee or commission."

In rejecting the broker's argument that this clause brought the situation under the authority of the Homefinders case, the Court stated:

"It is our conclusion that this provision of the agreement was a 'hold harmless' agreement between the parties to the sales agreement and that it cannot be expanded into an agreement by the respondents to pay to appellant 'any sum of money', especially where the fixed amount to be paid is not specifically set forth. [Citations omitted.]" 89 Idaho 107, 111, 403 P.2d 585, 587.

The clause relied upon by respondent differs from the language interpreted in *Robertson* in that it makes no commitment to the Hardys, recites the specific amount earned by the broker, and seemingly has no purpose other than acknowledging the obligation owed to respondent.

The findings of fact of a trial court will not be disturbed on appeal when based on substantial competent, though conflicting, evidence. Mast v. Mast, 95 Idaho 537, 511 P.2d 819 (1973); Clements v. Clements, 91 Idaho 732, 430 P.2d 98 (1967). Although the testimony at trial was conflicting, the trial court found that John had indeed read the entire contract to his parents and appellant therefore knew of the terms of the sale to the Hardys and the broker's commission. Since (1) appellant accepted the deviation between the terms originally sought by her and those offered by the Hardys and (2) the commission clause states that payment is for "services rendered," it was correct for the trial court to find that appellant had received from respondent those services sought. The respondent had procured a party willing to buy the ranch at certain terms. Frye v. Levanger, 76 Idaho 252, 281 P.2d 134 (1955). These factors, coupled with the express finding by the trial court that respondent had fulfilled all obligations to appellant, lead us to the conclusion that the trial court correctly awarded

the commission to Mrs. Isaguirre. Homefinders v. Lawrence, *supra*; Frye v. Levanger, *supra*. *See also* Annot. 45 ALR3d 1326 (1972); Annot. 24 ALR3d 1160 (1969).

A further assignment of error is advanced in the trial court's "refusing to admit evidence concerning a telephone conversation between the [appellants] and their son, Pete Echevarria, which occurred shortly after the agreement had been signed." However the portion of the testimony referred to by appellant reveals that appellant's attorney and not the trial court limited the son's testimony.[3] The appellant has not met the burden of showing error affirmatively in the record. Close v. Rensink, 95 Idaho 72, 501 P.2d 1383 (1972).

The appellant also assigns as error the failure of the trial court both to grant a new trial pursuant to the initial motion and to consider the grounds in the amended motion. The five specific grounds offered by appellant in the original and amended motions for new trial are either resolved in favor of the respondent or rendered moot by the foregoing discussion of the merits of the appeal. A general ground in the amended motion, that of surprise and new evidence, is based on appellant's inability to testify at trial due to illness. The supporting affidavit indicates that appellant was ill for a considerable period prior to the trial, while the record does not contain any request for a delay of trial. In view of this, the trial court did not abuse the broad discretion afforded that court in such matters. The assignment is rejected. Hollandsworth v. Cottonwood Elevator Company, 95 Idaho 468,

511 P.2d 285 (1973); Craig H. Hisaw, Inc. v. Bishop, 95 Idaho 145, 504 P.2d 818 (1972); Idaho Rules of Civil Procedure, rule 59.

The judgment of the trial court is affirmed. Costs to respondent.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.

---

3. " * * *

Q [By Miller, appellant's attorney] Mr. Echevarria, were you familiar with the fact that your parents had signed the contract which has been admitted in evidence here as Exhibit No. 1? I will show it to you, and if so, when did you first find out about it,

A [By Pete Echevarria] Well, I never was familiar with that contract until the night that they supposed to have had a meeting out to my folks' ranch, and after that meeting it wasn't seconds that my mother had called me at Caldwell, Idaho.

MR. EISMANN: We object to this as hearsay, Your Honor.

MR. MILLER: He can say that his mother called, 'My mother called me.' You can't say what your mother told you in this conversation.

A All right.

Q Your mother called you that evening.

A That evening."