589 P.2d 532

Jeanne E. HAWKINS, now known as Jeanne E. Hallock, Plaintiff-Respondent and Cross-Appellant,

v.

Lynn A. HAWKINS, Defendant-Appellant and Cross-Respondent.

No. 12421.

Supreme Court of Idaho.

Dec. 28, 1978.

Byron J. Johnson of Webb, Johnson, Redford & Greener, Boise, for appellant.

Stanley Welsh of Clemons, Cosho, Humphrey & Samuelsen, Boise, Paul M. Mahoney of Allard, Shelton & O'Connor, Pomona, Cal., for respondent.

BISTLINE, Justice.

At the time of their parents' divorce in Ada County District Court in the summer of 1973, the two children of the dissolved marriage were girls, six and four years of age, then living with their father. The mother sought the divorce. She alleged the fitness of both parents, adding that under circumstances then existing that it was in the best interests of the children that the father have custody subject to reasonable visitation rights in the mother. Although the action went by default, the district judge before whom the cause was heard inquired of the mother as to her relinquishment of custody of her children, holding the matter under advisement while he obtained the benefit of a child custody investigation by an appropriate state agency. Thereafter a final decree was entered in which custody was placed in the father and reasonable visitation awarded to the mother.

Before a year went by there were minor skirmishes between the parties as to the fulfillment of reasonable visitation in the mother. In due time there followed the mother's petition that the final decree be modified to place custody with her. Declaring that the circumstances which had existed at the time of the divorce had changed, she alleged that the requested custody

change would be in the best interests of the children. She premised change of circumstances on allegations that at the time of the divorce her health had not been good, but that, away from the children's father, she had recovered, had subsequently remarried, and could now resume her care of the children.

THE CUSTODY ISSUE.

The modification proceeding did not come before the district judge who had first heard the divorce and custody issue, but was assigned to an attorney magistrate for trial of the issue raised.[1] The trial court found a change in the mother's circumstances as alleged, but found no detrimental change whatever in the father's circumstances. He found that the father maintained the children in a clean suitable home, and that he had provided the girls with appropriate physical and health care, religious training, love, discipline and support. He concluded that custody should not be changed and entered an order to that effect. The mother appealed to the district court. By written opinion, the district court held that:

> [T]he record substantiates Judge Carey's findings and conclusions. The [mother] obviously has readjusted her life and is now emotionally and physically able to once again care for her two daughters. The father continues to be a thoroughly adequate parent and custodian of the children.

On further appeal to this Court, the mother continues her challenge to the trial court's refusal to award her custody. Relying on *Brashear v. Brashear*, 71 Idaho 158, 228 P.2d 243 (1951), the mother urges that the trial court abused its discretion in not awarding custody to her on the premise that, all things being equal, children of tender years, especially girls, should be in the custody of their mothers. We conclude that the trial court was justified in finding that all things were *not* equal in this case. Although both the mother and father have

---

1. Pursuant to I.R.C.P. 83(u)(1), on the ensuing appeal the district court functioned as an appellate court. The magistrate will be referred to herein as the trial court.

been found fully qualified to be the custodial parent, these children have resided continuously with their father since early 1973. Moreover, this was not the original custody litigation, but a modification proceeding brought after the father's custodial function was tested by the passage of time. The trial court found that the father had performed as an excellent parent. The district court in its appellate review determined that these findings are amply supported by the record. The record amply sustains the district court in his conclusion, with which we agree.

■ The mother has also argued, citing *Bezold v. Bezold*, 95 Idaho 131, 504 P.2d 404 (1972), that a child's preference, though not binding, should be taken into consideration, and that one daughter expressed a preference to live with her mother. The trial judge was entitled to weigh this expressed preference in light of the facts of the case, *Posey v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977), including the child's age (the oldest had just turned eight) and the fact that the mother had the girls with her up until the day of the hearing, after having obtained them in June for what was to have been a summertime visitation. Nothing in the record suggests that the trial court did not accord proper weight to the one girl's expression of preference.

■ The trial court explicitly concluded that it was in the best interests and welfare of the minor children that they continue in the custody of their father. The district court found that conclusion supported by sufficient evidence, and we agree. A trial court is guided by the principle that the paramount consideration in any custody proceeding is the best interests and welfare of the children involved. *Posey v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977); *Prescott v. Prescott*, 97 Idaho 257, 542 P.2d 1176 (1975). An abuse of the trial court's wide discretion occurs only when the evidence is insufficient to support its conclusion that the interests and welfare of the children will be best served by a particular custody award. *Tomlinson v. Tomlinson*, 93 Idaho 42, 454 P.2d 756 (1969); *Larkin v. Larkin*, 85 Idaho 610, 382 P.2d 784 (1963).

### THE VISITATION ISSUE:

As noted above, in the original divorce decree, the mother was given the right of reasonable visitation. When she subsequently sought modification awarding custody to her, she did not alternatively request the court to further, and in detail, define her visitation rights. The record shows that in the period of time from the divorce and up until the modification hearing, there were some problems, probably not large in the overall course of human relationships. A court order had been required at one time on the occasion of the father preparing to be gone from Boise for an extended time in connection with his work, but refusing to allow the mother to have the children with her while he was gone. The record reflects that the parties were thereafter able to agree on reasonable visitation until about the time the mother's custody modification petition was filed.[2] Notwithstanding that she sought no definition of visitation rights, the trial court spelled out her visitation in detail:

In every month other than June, August, and December, a 48 hour week-end, ceasing at 6:00 P.M. on Sunday, to take place within the State of Idaho.

The last fifteen days in June.

The first fifteen days in August.

Six days just after Christmas, ceasing at 6:00 P.M. on January 2.

The June, August, and December visitations were authorized to be exercised in California or Idaho, but a $1000.00 cash bond was required as a condition of the mother's right to take the children out of Idaho.

---

2. In all, the parties had agreed on the following visits up to the time of the modification petition. Christmas 1973, 16 days beginning before Christmas; Easter 1974, one week; summer 1974, six weeks; Thanksgiving 1974, 24 days (partly agreed to, partly extended by court order); Easter 1975, 10 days; summer 1975, 6 weeks (accepting as true the father's testimony as to the agreed on dates).

The mother was required to pay all costs of transportation related to visitation and to accompany the children on any such transportation.

The trial court's belief that he should rule on and define visitation is best explained by his own language set forth in his findings and conclusions:

[Finding 25] There has developed since the separation and divorce such animosity between the parties that they have not dealt with each other in a reasonable fashion with respect to the care, custody, control and visitation of the children; nevertheless both parties expressed in open Court a desire to cooperate in insuring that the best interests of the children will be served in the future.

[Conclusion 4] It is not in the best interests and welfare of the minor children that there be continued friction and discord between the parties concerning visitation. Where, as here, the parties have not acted reasonably with respect to visitation rights, the Court is required to define said rights in such detail, and to make and enforce such regulations, as may become necessary to secure their proper observance. See, *Kirkwood vs. Kirkwood*, 83 Idaho 844 [444], 363 P.2d 1016 (1961); *Dawson v. Dawson*, 90 Idaho 234, 409 P.2d 434 (1965); I.R.C.P., Rule 54(c).

The district court, on its review, held the trial court had too severely restricted the mother's visitation of the children, observing that

The record and findings both substantiate the mother's present stability and ability to care for her two daughters and maximum exposure to this relationship ought to be encouraged and fostered.

The district court modified the trial court's visitation order so as to provide the mother with

Summer visitation to consist of that period of time from one week after school ends in the spring until one week before it begins in the fall.

The remainder of the visitation schedule was not altered; however, the trial court's transportation expense provision was replaced with one requiring that transportation be paid by the "receiving parent." The requirement that the mother accompany the children on any transportation was eliminated. The district court further provided that the father should pay the sum of $75 per child for each of the three summer months that the children were with their mother.

From the appellate decision of the district court, the father has appealed all district court modifications other than that which eliminated the requirement of accompaniment. As a procedural matter, he challenges the authority of the district court to modify the visitation provisions set by the trial court. He argues that the scope of an appellate court's power to modify a judgment is narrow and is confined to cases where the judgment does not conform to the pleadings, contains clerical errors, is broader or narrower than the issues, or does not conform to the verdict or the findings.

I.R.C.P. 83(u)(1), which became effective on March 1, 1976, provides in part:

The scope of appellate review on an appeal to the district court shall be as follows:

(1) Upon an appeal from the magistrate's division of the district court, not involving a trial de novo, the district court shall review the case on the record and determine the appeal as an appellate court in the same manner and upon the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the appellate rules of the Supreme Court.

We read this as saying that a district court, in making an appellate review of a magistrate's decision, should perform that task in the same manner as this Court performs its appellate review of the trial decision of a district court. In reviewing a magistrate's findings, therefore, the district courts should adhere to the well recognized rule that findings based on substantial and competent, though conflicting, evidence will not

be set aside on appeal. *Prescott v. Prescott*, 97 Idaho 257, 542 P.2d 1176 (1975); *Isaguirre v. Eschevarria*, 96 Idaho 641, 534 P.2d 471 (1975); I.R.C.P. 52(a).

■ Furthermore, upon the appellate review conducted in a district court, the district court is, as is this Court on an appeal where the district court has been the factfinder, empowered to affirm, reverse, remand (including remand for a new trial with instructions), or modify[3] the judgment. I.R.C.P. 83(u)(2). Where the trial court's findings of fact are confused or in conflict, or where findings on a particular issue are lacking, and resort to the record does not show clearly what findings are correct, the district court ordinarily will not modify the judgment. *Frederickson v. Deep Creek Irr. Co.*, 15 Idaho 41, 96 P. 117 (1908); 5B C.J.S. *Appeal and Error* § 1874 (1958). The district court will either remand for new findings, or, alternatively, act under I.C. § 1–2213(2) and I.R.C.P. 83(u)(2) and conduct a partial or whole trial *de novo*.

The question presented by the father's appeal is two-fold in nature. First, did the trial court err in concluding that it could and should properly specify the places and conditions of the mother's visitation? If not in error in so doing, were the modifications made by the district court on appeal appropriate?

The answer to both questions is suggested in prior Idaho cases. In *Kirkwood v. Kirkwood*, 83 Idaho 444, 363 P.2d 1016 (1965), the mother, on obtaining a divorce, was awarded custody of two children, with the usual provision for "reasonable" visitation in the father. At a subsequent modification hearing, the father sought custody because of the mother's alleged violation of his visitation rights. Custody was left in the mother, but the district court spelled out the details of future visitation. A year later the father again sought to gain custody, charging the mother with violations of the previously entered order detailing his visitation. Custody was again left with the mother, but visitation rights were expanded favorably to the father and in more detail. On appeal, the mother challenged both the *necessity* for detailing visitation and the order entered which effected the changes. In apparent recognition of *Tobler v. Tobler*, 78 Idaho 218, 299 P.2d 490 (1956), although that case is not mentioned in the opinion, this Court on its review of the record agreed that *necessity* for such action by the trial court did exist, saying:

> Where the custodial parent refuses to recognize the visitation right of the other, or obstructs the exercise thereof, the court is required to define the right in such detail, and to make and enforce such regulations, as may become necessary to secure its observance.

*Kirkwood v. Kirkwood, supra*, 83 Idaho at 450, 363 P.2d at 1019.

In *Tobler*, the mother obtained a divorce and custody of three children, subject to reasonable visitation rights in the father. Six months later the father sought a modification which would define "reasonable visitation." The opinion in that case spells out the district court's definition:

---

3. Although not a common occurrence, in several cases this Court has reversed the trial court's custody decision and awarded custody to the other parent without a remand. *Application of Anderson*, 79 Idaho 68, 310 P.2d 783 (1957); *Peterson v. Peterson*, 77 Idaho 89, 288 P.2d 645 (1955); *Thurman v. Thurman*, 73 Idaho 122, 245 P.2d 810 (1952); *Richardson v. Richardson*, 72 Idaho 19, 236 P.2d 718 (1951); *Kirkpatrick v. Kirkpatrick*, 52 Idaho 27, 10 P.2d 1057 (1932). Other types of modifications ordered by this Court have included: setting aside entirely an award of child support, *Cope v. Cope*, 98 Idaho 920, 576 P.2d 201 (1978); reducing the trial court's summer visitation provision from six to four weeks, *Tobler v. Tobler*, 78 Idaho 218, 299 P.2d 490 (1956); striking a provision authorizing the clerk of the court to withhold support payments in order to enforce visitation rights, *Kirkwood v. Kirkwood*, 83 Idaho 444, 363 P.2d 1016 (1961); modifying a decree awarding divided custody to specify reasonable visitation rights for the non-custodial parent, *Smith v. Smith*, 67 Idaho 349, 180 P.2d 853 (1947); doubling the amount of child support awarded by the trial court, *Hampshire v. Hampshire*, 70 Idaho 522, 223 P.2d 950 (1950); reversing the trial court's modification of visitation and reinstating the original decree, *Wilson v. Wilson*, 73 Idaho 326, 252 P.2d 197 (1953).

The court in the order of modification fixed certain visiting periods in which the children, Barbara Jane and Michelle, could be with defendant, and further provided that defendant should have Barbara Jane for a period of six weeks every summer, and Michelle for a like period when she reaches the age of six years.

Additionally the court defined the term "reasonable visitation" as follows:

"That the term reasonable visitation shall be and the same hereby is further amended to provide that during the odd numbered years such as 1955, 1957, etc., the Defendant shall be entitled to have the said minor children visit him in his home on Easter, Thanksgiving and Christmas Eve and the Plaintiff shall have all of the said children, including Mary Irene Tobler on Christmas Day. During the even numbered years such as 1956, 1958, etc., the Plaintiff shall be entitled to have all of the children, including Mary Irene Tobler, * * * on Easter, Thanksgiving and Christmas Eve, and the Defendant have the said children for Christmas Day."

*Tobler v. Tobler, supra*, 78 Idaho at 223, 299 P.2d at 493. The mother, who was plaintiff in the excerpt above-quoted, appealed to this Court, urging two-fold that the order detailing visitation went beyond the issues, and also that its provisions were an abuse of discretion. The Court readily disposed of the first contention on observing that the father's petition sought definition, and the mother had testified to the inability of the parties to agree. In consideration of the second question, the Court concluded that the failure of the parties to agree on visitation was proper justification for the exercise of the court's "jurisdiction" to fix such periods and define reasonable visitation.

A year earlier in *Peterson v. Peterson*, 77 Idaho 89, 288 P.2d 645 (1955), the Court had had occasion to pass on the same question. There the father obtained the divorce and custody of the children, with reasonable visitation in the mother. Twenty-two months later the mother sought a modification which would change the custody over to her. As part of the grounds for relief, she alleged the father's denial of reasonable visitation. The district court, after hearing the evidence, modified the decree by giving the mother custody in the months of June, July and August of each year. The father appealed. This Court observed the mother's record was not good, frowned upon divided custody, and reversed the modification order. The Court addressed the visitation problem as follows: "If the parties cannot agree on times and places for such visitations other than the home of plaintiff, the trial court should, *on proper application*, define the term 'reasonable times and places'." *Id.* at 96, 288 P.2d at 649.

If we are to adhere to the doctrine of those cases, and we perceive no reason for not doing so, it appears that Idaho is then committed to the rule of leaving to the divorcing parents of minor children the task of initially coming to grips with and defining reasonable visitation. Only in those rare instances where the parties are unable to reach an agreement should the courts interfere. Where the parties can come to terms, we believe it ill-advised ·for the courts to unnecessarily take on the burden of child supervision. Historically, divorce courts have had the awesome duty of awarding custody, and have concomitantly determined whether in rare instances a non-custodial parent shall or shall not have any visitation rights. *See* 24 Am.Jur.2d *Divorce and Separation* § 801 (1966). In the field of visitation, it appears that judicial abstention in many jurisdictions, and in Idaho in particular, has been the rule insofar as is concerned the decreeing of the minute details attendant thereto. In an enlightened society, the parties can be expected to, and routinely do, work out a visitation system, if not a schedule, which is conducive to the welfare of the children involved. Such should be judicially encouraged. Cooperating divorced parents can achieve far more for their children than might flow from even the best thought-out orders of the courts. Essentially, a court in defining the details of visitation is merely serving so supply for the parties the element of reasonableness, and when a court does so it is

not truly "finding" or "concluding" but fashions the visitation remedy which the non-custodial parent should have. In doing so, by reason of the experience and wisdom of the court, the visitation so spelled out is that which the court in its best judgment deems in the welfare and best interests of the children. Responsible divorced parents in each case are in far better position to do the same thing.

What we have before us on the visitation issue is a father who contends that the district court on its appellate review should not have interfered with and modified the visitation which the trial court bestowed upon the mother. We have a mother who defends those district court modifications, but whose appeal from the trial court contends that the trial court was not authorized to set visitation. We perceive that we should not reach the issue raised by the father's appeal without first determining whether the trial court committed error in finding that the unreasoning attitude of the parties required that visitation of necessity be defined.

We note again that the trial court, in entering findings after noting his view of the past conduct of the parties relative to visitation, stated that "both parties expressed in open Court a desire to cooperate in insuring that the best interests of the children will be served in the future." The parties apparently thought during those proceedings that the only issue at stake was the mother's attempt to gain custody of the children. All evidence taken went to that issue alone. No testimony was taken which would bear upon the development of a reasonable visitation schedule for the non-custodial parent. At best in the entire record there is only an affidavit submitted in support of the father's motion for rehearing before the district court wherein he stated that the district court modification deprived him and the children of any opportunity to go camping in the summer, which was how he usually spent his vacation. We conclude that where, as here, the visitation ordered by each court below did not result from a determination of a visitation issue either explicitly raised or implicitly tried, no testimony being taken on such issue, both are unsupported and cannot stand. Each court may have very well fashioned a suitable visitation arrangement, but if so, it was accomplished by sheer wisdom and experience, and not on the basis of contentions and testimony of the parties.

On remand, considering the lapse of time which has intervened, the trial court should first ascertain whether a reasonable visitation schedule has been or can be worked out by the parties. If not, the court should hear the views of both mother and father and any supporting evidence on that issue, so that a just and reasonable order may be entered, one which is in the best interests of the children and which at the same time does not unnecessarily burden or inconvenience the parents. The Court is also mindful that in the time the appeal has progressed through the district court and into this Court, it is not unlikely that changes in circumstances have occurred, and there may have been further proceedings in the magistrate court, which, should such have occurred, might render merely advisory that which the Court has decided today.

The district court "Order Modifying Decree" dated 13 September 1976 is set aside, and the cause is remanded to the district court with directions to enter an order setting aside the trial court decree dated September 16, 1975, which modified the district court judgment and decree of August 29, 1973, leaving stand the judgment and decree of August 29, 1973, subject to further proceedings consistent herewith. Costs in this Court to respondent.

McFADDEN, DONALDSON and BAKES, JJ., concur.

SHEPARD, Chief Justice, concurring in part and dissenting in part.

I regret that I can concur in the majority opinion only to the extent that it refuses to interfere and modify that portion of the original divorce decree relating to the custody of the minor children.

As to that portion of the majority opinion which affirms the award of support monies during the time that the children are visiting with the noncustodial parent, I continue to adhere to the views expressed in my dissent in *Koester v. Koester*, 99 Idaho 654, 586 P.2d 1370. Those views do not constitute the law of this state and, therefore, do not bear repetition. I only point out that here, as in *Koester*, the trial judge who had the parties before him found no need for such a provision, but his views were overridden by the district judge on appeal to that court. Here, as in *Koester*, the noncustodial parent had no child support obligation. Here, the noncustodial parent has remarried and the income of that family, which has no minor children to support, exceeds the income of the custodial parent. The record discloses a complete failure to show any need therefor, but, nevertheless, the district judge modified the order of the trial judge by requiring the custodial parent to pay child support during the periods of time when the children were visiting the noncustodial parent. I would hold the imposition of such requirement to be error.

I turn now to what is, in my opinion, the most disturbing portion of the majority opinion. Without a request from either the appellant or the cross-appellant, this Court overturns the lower court's orders specifically regulating the visitation rights of the parents of the children. Both the magistrate judge and the district judge on appeal made specific findings of fact spelling out the necessity for the orders. None of those findings are challenged on appeal. The majority opinion glosses the record relating to visitation with the children and compliance with or violation of the court's orders relating to visitation with bland statements that "there were minor skirmishes between the parties as to the fulfillment of reasonable visitation" and "in the period of time from the divorce and up until the modification hearing, there were some problems, *probably not large in the overall course of human relationships*." In my view, such constitutes a clear intrusion by this Court into the fact finding process of the lower courts. Both the trial court and the district court found and concluded that the "continued friction and discord between the parties concerning visitation" was not in the best interest and welfare of the minor children and that the best interest and welfare of the minor children required that the visitation rights be specified. In my opinion, such findings and conclusions of the lower courts are amply supported in the record. Both lower courts pointed out and specified instances of disagreement, friction and discord relating to visitation rights which necessitated prior orders of the court. The district court found "unless the decree is modified to specify the times and places of visitation, there will be continuing controversy between the parties, which controversy will not be in the best interest of the children." Perhaps the most impelling reason contained in the record for the exercise of discretion by the lower courts in setting specifics of visitation related to the months immediately preceding the hearing in the lower courts. The noncustodial parent had secured possession of the children in California and refused to let the custodial parent even see the children despite the pleas, demands and interposition of the parties' attorneys. That situation prevailed from June 13, 1975, until the custodial parent saw the children through the window of the courtroom on August 30, 1975. During the lower court hearing the trial court interviewed the children on the record in the presence of counsel but in the absence of the parents. As to one of the children, he found that she was hostile and would not talk in the absence of the maternal grandmother and it was necessary that that person be permitted in the courtroom. The court further found that the child had been programmed as to how she would react to and what she would state to the court. In my view, the record amply supports the findings and orders by those lower courts relating to the exercise of visitation.

This Court, in a long series of decisions, such as *Kirkwood v. Kirkwood*, 83 Idaho 444, 363 P.2d 1016 (1961); *Emerson v. Quinn*, 79 Idaho 358, 317 P.2d 344 (1957); *Dawson v. Dawson*, 90 Idaho 234, 409 P.2d

434 (1965), has held that where necessary a court is *required* to define visitation rights in detail and to make and enforce such regulations as may be necessary to secure the observance of the court's orders. *Cf., Thurman v. Thurman,* 73 Idaho 122, 245 P.2d 810 (1952), 32 A.L.R.2d 996. In *Dey v. Cunningham,* 93 Idaho 684, 471 P.2d 71 (1970), a district judge sought to apply the remedy which the majority requires the district judge to apply in the instant case. That district judge was reversed by this Court.

As stated in *Dey,* "the record discloses that the parties were before the court several times and it is not surprising that the district judge rather obviously lost patience with the parties and *their lack of ability to agree among themselves as to reasonable visitation rights.*" For their inability to so agree among themselves, the judge found them in contempt. A unanimous court said in *Dey:*

> We feel it better practice for the court by written order to specifically delineate in detail what are reasonable visitation and custodial rights. We do not approve of the methodology used by the trial court in suggesting that the parties could purge themselves of the contempt order by entering into an agreement among themselves controlling the custodial and visitation rights. While such might appear on the surface to have a very salutary and practical effect in resolving the dispute, obviously in this case it did not.
>
> As hereinabove stated, the jurisdiction of the trial court over child custodial and visitation rights is a continuing one and should be exercised by the court in such detail and specificity of order as may be necessary to carry out the intent of the court. * * * The practice of utilizing a minor child as a shuttlecock to perpetuate a quarrel between former husband and wife is one we cannot too strongly condemn. It is, however, a practice with which district judges can and should deal strongly and forthrightly. Their orders should, when necessary, be clear and concise and they should not be slow in exercising their contempt powers to enforce their orders.

Today, in my opinion, this Court tells the district judges of this state to indulge in a practice which this Court condemned in 1970 in *Dey.*

In my judgment, the disposition of the matter by the magistrate court should be reinstated in its entirety.