670 P.2d 894

**W. Monte ROBINSON,
Plaintiff-Appellant,**

v.

**JOINT SCHOOL DISTRICT NO. 331, MI-
NIDOKA, CASSIA, JEROME and LIN-
COLN COUNTIES, State of Idaho, De-
fendant-Respondent.**

No. 14753.

Supreme Court of Idaho.

Oct. 6, 1983.

Byron Johnson, Boise, for plaintiff-appellant.

Roger D. Ling of Ling, Nielsen & Robinson, Rupert, for defendant-respondent.

BISTLINE, Justice.

The plaintiff Monte Robinson brought an action to recover an additional ten percent of his base salary for the 1978–79 school year which he alleged was due under a policy of the Joint School District No. 331 to pay such an additional amount to teachers who taught six class periods each day. Robinson appeals from a decision of the district court which reversed on appeal a decision of the magistrate awarding judgment in favor of Robinson for compensation allegedly due pursuant to a policy of the District to pay teachers required to teach six class periods a day a salary increment equal to ten percent of their base salary. The facts giving rise to this action are as follows:

On December 11, 1972, the Board of Trustees of the District adopted a Policy Handbook which contained a portion designated as "TEACHERS PROVISIONS OF EMPLOYMENT" (the Provisions of Employment). One of the provisions stated:

"4. All teachers whose services are required for more than 190 days or from whom special services are required in time spent above the actual teaching day shall be contracted according to the sala-

ry schedule plus increments to be determined by the Board of Trustees."

On May 15, 1973, five teachers from Minico High School met with the Board to request additional salaries for teaching six periods a day. Teachers at Minico High School were ordinarily required to teach only five classes a day. The Board agreed to the teachers' request and agreed that the additional amount to be paid would be ten percent of a teacher's base salary. The minutes of the Board meeting provide:

"Mrs. Lindstrom, Mr. Senecal, Mr. Caldwell, Mr. Barnes, and Mr. McDaniel met with the board to request additional salaries for teaching six periods each day.

"*It was decided to pay additional for teachers teaching six periods a day.*" (Emphasis added.)

During the period from May 15, 1973, until the time of the trial in this case, other teachers at Minico High School in addition to those named in the Board minutes were paid ten percent extra for teaching a sixth class period.[1]

On April 15, 1974, the Board amended portions of the Provisions of Employment that are unrelated to the present case. However, the District alleges that the Provisions of Employment in existence at the time of those amendments included the following provision:

"2. ... The salary for special services as indicated in paragraph two of the Standard Teachers Contract, is not included in the annual salary as provided in Section 33–1212, Idaho Code. *Salaries for special services will be determined annually by the Board of Trustees.* The District reserves the right to make adjustments in the assignment of teaching duties or special services as indicated on the contract when it determines that such change is in the best interest of the District." (Emphasis added.)

1. During this period the only teachers in the high school who taught more than five periods and did not receive any extra compensation were Mr. Eilers and Mrs. Johnson. Mr. Eilers taught five or six students calculus during his preparation period and did not request additional compensation. Mrs. Johnson supervised a group of seven or eight cheerleaders during her sixth period and did not make any request for additional compensation.

Although it appears that this provision was contained in the policy books prepared by assistant superintendent Doyle Lowder, whose duty it was to prepare the books and to make appropriate corrections when changes in policies were made, there is nothing in the minutes of the Board which demonstrate that this provision had been adopted by the Board prior to April 15, 1974. The Board minutes reveal, however, that such a provision was specifically adopted by the Board on May 16, 1978, as part of the Provisions of Employment:

"c. Salaries for special assignments will be determined annually by the Board of Trustees.

"d. The Board of Trustees reserves the right to make adjustments in the assignment of teaching duties or special assignments as indicated on the contract when it determines that such change is in the best interest of the School District."

In May of 1976, the Minidoka County Teachers Association and the Board negotiated an agreement (the Master Agreement) pursuant to the Professional Negotiations Act, which provided in part:

"All existing district policies involving terms and conditions of professional service, matters relating directly to the employer-teacher relationship, and other terms of employment not specifically referred to in this Agreement shall be maintained at not less than the highest minimum standards in effect in the district at the time this Agreement is signed, provided that such conditions shall be improved for the benefit of teachers as required by express provisions of this Agreement. This Agreement shall not be interpreted or applied to deprive teachers of professional advantages heretofore enjoyed unless expressly stated herein."

This provision, the Maintenance of Standards Clause, remained in full force and effect between the Board and the Association up to the time of trial in this case.

Robinson was first employed by the District as a high school teacher for the 1976–77 school year by a written contract dated July 12, 1976. The contract provided for a base salary of $10,253.00, with a ten percent increment to the base salary (in the sum of $1,025.30) for special services described as a "6 period day." Robinson was employed to teach a vocational industrial mechanics class, which was being offered for the first time at Minico High School. There were ninety-seven students enrolled in the new program and taught by Robinson during the 1976–77 school year.

Robinson was re-employed by the District as a high school teacher for the 1977–78 school year by a written contract dated May 19, 1977, which provided for a base salary of $10,853.00. Robinson was offered, but did not accept, the opportunity to teach six periods a day for an additional ten percent of the base salary provided for in his contract. The District then agreed to pay another teacher, Bruce L. Koon, an additional ten percent of the base salary provided in his contract for teaching the additional period which had been offered to Robinson, but which Robinson had not accepted. There were fifty students enrolled in the industrial mechanics program during the 1977–78 school year, divided into six classes, five of which were taught by Robinson.

The dispute here in question arises out of the contract between Robinson and the District for the 1978–79 school year. Robinson received and signed a contract of employment on May 23, 1978, which he then turned in to the District for approval. Robinson testified that he received notice from the principal prior to the end of the school year that he would be expected to teach six class periods the following year. However, the contract which he signed on May 23, 1978, made no reference to Robinson's teaching six class periods. On June 7, 1978, Robinson met with the superintendent of schools, Mr. Fagg, at which time the proposed contract which had previously been submitted to Robinson was discussed. During this discussion it was explained to Robinson that he would be teaching six periods a day, at which time Robinson pointed out that the contract did not say anything about six periods a day. At that time and at the

direction of Mr. Fagg, the following words were typed at the top of the contract: "This includes a six period day." Thereupon, Robinson requested that he be paid an additional ten percent of his base salary for teaching the sixth class period, which request was denied by Mr. Fagg. On or about June 23, 1978, Robinson received a copy of the May 23, 1978, contract which had been approved by the Board.

On August 16, 1978, Robinson called Mr. Fagg and again requested a ten percent salary increment and Mr. Fagg again refused the request. On August 29, 1978, Robinson and Larry Caldwell, another teacher, met with Mr. Fagg to discuss the denial of the ten percent salary increment, but Mr. Fagg's position remained unchanged. At that meeting the filing of a formal grievance was discussed, and it was agreed that a grievance could be filed by Robinson by September 13, 1978.

On September 1, 1978, Robinson signed a new contract which increased the compensation he was to receive because he had accumulated college credits over the summer, and provided for a base salary of $12,-195.00. This contract contained the provision that Robinson would teach a sixth class period, but Robinson testified that at the time he signed the contract he did not see the provision.

On September 11, 1978, Robinson filed his grievance with the Board. The grievance was denied by a letter from Superintendent Fagg on September 19, 1978, and was denied by the Board by a letter dated October 17, 1978.

The District directed Robinson to teach six periods a day for the 1978–79 school year, and he did so. There were forty-six students enrolled in the industrial mechanics program during the 1978–79 year, divided into six classes.

On June 29, 1979, Robinson made a written demand on the District for payment of the increment to which he claimed he was entitled for teaching six periods during the 1978–79 school year. Thereafter this action was commenced by Robinson against the District. Following a trial in magistrate's

division, the magistrate issued a judgment awarding Robinson a sum equal to ten percent of his base salary for the 1978–79 school year, together with interest, attorney's fees and court costs. The magistrate's decision was based upon its findings that:

"3. On May 15, 1973, the Board decided to pay an additional amount for high school teachers who taught six (6) periods a day.

. . . .

"7. The highest minimum standards in effect in the District at the time the Master Agreement containing the Maintenance of Standards Clause was signed as it related to additional salary for high school teachers teaching six periods a day, was an additional ten percent (10%) of the teacher's base salary."

The District appealed the judgment of the magistrate. The district court reviewed the case on the record made in the magistrate's division, reversed the judgment of the magistrate and entered an order and judgment dismissing Robinson's complaint and awarding the District costs. Robinson appeals from the district court's decision.

■ The primary issue on appeal is whether there was substantial and competent evidence to support the findings of the magistrate that the Board on May 15, 1973, established a policy to pay high school teachers who taught six periods a day a salary increment equal to ten percent of the teacher's base salary, and that the policy established was the highest minimum standard in effect at the time the Master Agreement containing the Maintenance of Standards Clause was signed. This is the same issue that was before the district court in this case, which heard the case in an appellate capacity and based its decision on the record before it. Accordingly, in this case we may review the record of the magistrate court independently of the decision of the district court. I.R.C.P. 83(u)(1); *Olson v. Ada County,* 105 Idaho 18, 665 P.2d 717 (1983); *Nicholls v. Blaser,* 102 Idaho

559, 633 P.2d 1137 (1981); *Hawkins v. Hawkins,* 99 Idaho 785, 589 P.2d 532 (1978).

## I.

The initial question to be determined is whether there is substantial and competent evidence to support the magistrate's finding that the Board on May 15, 1973, established a policy to pay high school teachers who taught six periods a day a salary increment of ten percent of their base salary. The Board minutes of May 15, 1973, state that: "It was decided to pay additional for teachers teaching six periods a day." The district argues that the Board's decision was limited to the five teachers who appeared before it at that time, while Robinson contends that the magistrate correctly found that a general policy pertaining to high school teachers had been established. The District argues that the entry in the minutes does not support the magistrate's findings because the entry was not limited to high school teachers, and elementary and junior high school teachers in the District are required to teach six class periods a day without additional compensation. The District also argues that the magistrate's findings are not supported because the entry in the minutes makes no mention of the amount of the increment to be paid.

■ Although the minutes of May 15, 1973, demonstrate that some action was taken by the Board, the details of exactly what action was taken are not apparent. Accordingly, the magistrate properly admitted parol evidence on the issue. *See* 68 Am.Jur.2d *Schools* § 48, p. 399 (1973) (parol or extrinsic evidence is admissible where it does not vary or contradict the record, but merely explains it).

■ The Board minutes of May 15, 1973, contain nothing which limits the Board's decision to the five teachers who were then before the Board and the Board's course of conduct demonstrates that the Board's decision was not so limited. In fact, the evidence demonstrates that during the time period from May 15, 1973, until the time of the trial in this case, all teachers at Minico High School were paid an increment of ten

percent of their base salary for teaching six class periods, with the exception of two teachers. One of the teachers was Mr. Eilers who taught five or six students calculus during his preparation period and the other was Mrs. Johnson who supervised a group of seven or eight cheerleaders during her sixth period. The record contains nothing which suggests that either of these two teachers was requested or required by the District to conduct activities during a sixth period or that either sought additional compensation. Thus, although there was conflicting evidence in the record, we hold that there was substantial and competent evidence to support the magistrate's finding that the Board on May 15, 1973, established a policy to pay all high school teachers who taught six periods a day a salary increment equal to ten percent of their base salary.

## II.

■ The magistrate also found that the policy established on May 15, 1973, was the highest minimum standard in effect in the District at the time the Master Agreement containing the Maintenance of Standards Clause was signed in May of 1976. The District argues and the district court found that various additions to the Provisions of Employment evidenced a policy by the Board of annually determining salaries for special services on an individual basis, which policy was in effect at the time the Maintenance of Standards clause became effective. We believe that the district court exceeded its scope of review in making such a finding. The issue before this Court, and the issue that was before the district court, is whether there was substantial and competent evidence to support the magistrate's finding that the highest minimum standard existing in May of 1976 called for high school teachers who were required to teach six class periods a day to be paid a salary increment of ten percent of their base salary.

■ The magistrate found that the policy established by the Board on May 15, 1973, continued in effect and was the high-

est minimum standard in existence when the Maintenance of Standards Clause became effective. Other than its previous argument that no policy was established on May 15, 1973, the only argument offered by the District against the magistrate's finding is that sometime after the Provisions of Employment were adopted by the Board on December 11, 1972, and before the Maintenance of Standards Clause became effective in May of 1976, the Provisions of Employment were amended to allow the Board to make annual determinations of the increments to be paid to teachers required to teach additional class periods. The minutes of the Board contain no reference to such action during that time period, but demonstrate that the Provisions of Employment were specifically amended on May 18, 1978, to provide for annual determination of salaries for special services. Furthermore, a letter dated September 19, 1978, (Plaintiff's Exhibit No. 17), sent to Robinson from Superintendent Fagg, explains the reasons why Robinson was denied additional compensation, stating in part:

"You received the Provisions of Employment prior to signing your contract. There is no statement in the Provisions of Employment with reference to 10% for an additional class. *These were the conditions that prevailed at the signing of your contract and had been approved at a School Board meeting on May 16, 1978.*" (Emphasis added.)

Although a provision calling for annual determination of teachers' salaries for special services was included in the Provisions of Employment contained in the policy book maintained by the assistant superintendent, which Provisions of Employment were distributed to the faculty, this does not estab-

lish that such a policy in fact existed, since only the board of trustees of a school district can adopt policies for the District.[2] *Independent School District v. C.B. Lauch Construction Co.,* 76 Idaho 126, 130, 278 P.2d 792, 794 (1955). Accordingly, although there was conflicting evidence on the issue, we hold that there was substantial and competent evidence to support the magistrate's finding that the highest minimum standard in effect in the school district in May of 1976 when the Master Agreement containing the Maintenance of Standards Clause was signed, called for high school teachers required to teach six class periods a day to receive a salary increment equal to ten percent of their base salary.

The decision of the district court is reversed and the judgment of the magistrate, including its award of attorney's fees, is reinstated. This case is remanded to the district court for an award of attorney's fees on the appeal from the magistrate's division to the district court pursuant to I.C. § 12–120(1).[3] Attorney's fees on this appeal are also awarded on this appeal pursuant to I.C. § 12–120(1).

*Reversed and remanded.* Costs to appellant.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, specially concurring:

I concur with the majority opinion that substantial and competent evidence was presented to support the magistrate's findings. The district court erred in reversing the magistrate court for failing to find that the board adopted a policy requiring an annual determination for special service salaries on an individual basis. The magis-

---

2. The fact that the Provisions of Employment were attached to Robinson's contracts does not result in a waiver by Robinson of the protections of the Master Agreement. A teacher's individual contract is subsidiary to the terms of the Master Agreement between the board of trustees of a school district and the local education organization and may not waive any of the benefits of the Master Agreement. *Buhl Education Association v. Joint School District No. 412,* 101 Idaho 16, 607 P.2d 1070 (1980).

3. I.C. § 12–120(1) provides in part
"[I]n any action where the amount pleaded is two thousand five hundred dollars ($2,500) or less, and the plaintiff prevails in the action, there shall be taxed and allowed to the plaintiff, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees for the prosecution of the action...."

trate considered the evidence that the board adopted such a policy prior to the master agreement, but concluded in the memorandum opinion "that the policy of the board from 1973 until 1977 when the master agreement was signed, has been to give additional pay for high school teachers who teach a sixth period." That finding of fact was supported by some competent, although conflicting, evidence and thus should not have been overturned.

Nevertheless, the majority opinion should not be interpreted to hold that a school board's action is void unless the action is specified in the minutes of the meeting. The minutes are *prima facie* or the best evidence of a board's action, but where an action taken by a board is omitted from the minutes, other evidence may be used to prove the action. *See Knutsen v. Frushour,* 92 Idaho 37, 436 P.2d 521 (1968); *McFetridge v. Wieck,* 7 Or.App. 389, 490 P.2d 1044 (1971). The rule is contrary if a statute specifically requires an action to be recorded; however, I.C. § 33–508 merely requires the school board clerk to make a general record of the proceedings and "enter in said record all matters required by law, or by the board . . . ." *See Joseph v. Village of Downer's Grove,* 104 F.2d 974 (7th Cir.1939); *McFetridge v. Wieck, supra.* In the present case, the assistant superintendant, who kept the policy book for the board, testified that on April 15, 1974, he presented to the board the "provisions for employment," which contained the language of annual determination, and he implied that the board acted to adopt the provisions, even though not recorded in the minutes. He also testified that a copy was mailed to each employee. Although the magistrate court was unconvinced by this evidence, it could have held that this evidence established a policy for the board.

SHEPARD, Justice, dissenting.

The facts as stated by the majority, while essentially correct insofar as they go, should be cast in a different light. In 1976, the school district initiated a vocational industrial mechanic class at Minico High School.

Robinson was hired to design that curriculum and teach the class for six periods a day. Some 94 students enrolled in the class. Robinson received an extra ten per cent of his salary for teaching that sixth class period. In 1977, Robinson was offered a contract for the next succeeding school year to teach the same class six periods a day with the same ten per cent increase in salary. He declined that offer and only taught five classes per day for the succeeding school year. After two years, enrollment in the class had dwindled to 45 students. Therefore, it was determined by the administration that the work load had dropped so significantly (an average of seven or eight students per class period) that the entire six class periods would be taught by one teacher with no additional compensation. Robinson was tendered a contract which specifically required him to teach those six class periods with no additional salary and that contract was accepted by Robinson and approved by the district. Robinson taught the 1978–79 school year under the authority of that contract. He filed a grievance for being required to teach that sixth period with no additional compensation, but that grievance was rejected. The district contended below that Robinson was barred because the grievance was not timely filed. However, the magistrate found the contrary to that assertion and the magistrate's decision on that point was upheld by the district court.

The essence of Robinson's complaint is that contrary to the express terms of his contract, a school board policy required the payment of extra compensation if his teaching time per day exceeded four hours and ten minutes, albeit he had only seven or eight students in each class. Implied in the argument is that the district's contract demand which was accepted by Robinson was unconscionable in requiring him to teach classes of seven or eight students five hours per day for 195 days in return for his yearly salary of some $12,000 per year.

I would note that the decision of the district court is a model of meticulous and detailed consideration of the evidence, and, in my mind, could be adopted by this Court

**494**

as dispositive of the case. The district court noted that the questions presented were (1) whether the evidence supported a finding of a policy of the school district that required extra compensation be paid to all high school teachers who taught a sixth class schedule, and (2) whether the uncontroverted evidence required a finding that the school district had a policy of determining annually on an individual basis whether or not additional salary would be paid for teaching a sixth class schedule. The district court held that the evidence did not demonstrate an all-inclusive policy of the board that under all circumstances the sixth class schedule would require additional compensation, but rather, (although the magistrate court had failed to make any finding on the matter), the school district policy was to require annual assessment of the need for additional compensation when extra duties of teaching were involved. The majority opinion here brushes aside that ruling of the district court stating that while the policy may have been enunciated and known to Robinson at the time he signed the contract, nevertheless, it was not necessarily *Board* policy. Such conclusion of the majority is clearly at odds with the meticulous holding of the district court pointing out exactly how that policy of the school board was adopted.

It is clear to me at least that the policy of the school board regarding annual evaluation was meant to and did cover situations such as are presented in the instant case. The work load of Robinson was obviously minimal when contrasted with the usual student ratio in a class and the amount of paperwork required beyond the actual teaching hours. Here the record indicates that because of the nature of the classes taught, Robinson had a minimum of paperwork beyond the actual teaching hours.

Robinson was offered a contract for a sum certain to teach a certain number of hours per day for 195 days. If he was dissatisfied, he could have rejected the offer and indeed there was protest by Robinson and extended negotiations and efforts to reduce the contract term to five classes per day. Robinson ultimately accepted the offer of the school board and signed the contract. In my opinion, the majority here modifies that express contract after it has been performed by both contracting parties by holding that a "policy" of the school district has somehow modified that totally executed contract. That "policy," the majority tells us, is to be found rooted in ambiguous, unclear actions of the school board which somehow contradict the express provisions of the Robinson contract. That "policy" purporting to set an overall requirement of extra compensation in all circumstances is also clearly contrary to the announced policy of the district that extra compensation will be determined on an annual basis under the individual circumstances of each case.

I would affirm the decision of the district court and adopt its decision as the opinion of this Court.